UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| DERBY CAPITAL, LLC, *et al* ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | Case No. 3:12-CV-000850-TBR |
| ) | |
| TRINITY HR SERVICES, LLC, et al ) | |
| ) | |
| Defendants ) | |

**DEFENDANTS BRANDON AND TIFFANY SIMMONS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR FAILURE TO STATE A CLAIM AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Brandon and Tiffany Simmons ("Movants") respectfully move this Court for an order dismissing Plaintiffs' Derby Capital, LLC's and Derby Capital JOB, LLC's Verified Complaint as against Movants.  Plaintiffs attempt to allege Movants are liable for (i) breach of a contract they are not a party to, (ii) fraudulent inducement to enter into a contract with Plaintiffs they couldn't pay for, when Plaintiffs were clearly on prior notice of the prospective source of the contract payments, and (iii) civil RICO, without managing to coherently articulate or plead *any* of the elements of a civil RICO claim.  Equally troubling is that throughout the Complaint Plaintiffs disingenuously conflate equity ownership in a company with direct ownership in that company's assets, and repeatedly allege that a properly authorized sale of company assets constituted a theft of a company (almost) equity holder's own property— an extremely disappointing claim being advanced by some gentlemen who know better.

## I. BACKGROUND

Plaintiffs are two limited liability companies formed by Bruce Miller, Jeff Moody, Sherm Henderson and others in 2011 to "provide merchant banking services and management and consulting services to early stage and distressed operating companies and real estate developments." Derby held itself out as being comprised of members "with a wide variety of skills and expertise", including "CEO's and real estate financiers as well as a C-level banker and highly regarded attorney." In the complaint, they are characterized as "a group of highly successful businessmen… for the purpose of pursuing business opportunities across America."

Derby's members parked themselves in Trinity's offices in October 2011, and, unable to generate sustainable deal flow on their own, looked for Anthony Huff to generate business for them. The deal subject of the Complaint is one of them. A letter of intent was signed in November 2011 contemplating a sale by Trinity to Derby of PSQ, LLC, the original holder of a controlling shareholder interest in General Employment Enterprises, Inc., a Chicago based publicly traded staffing company. This was supplanted in January 2012 with a letter of intent contemplating the issuance by Trinity to Derby of a 70% membership interest in Trinity. Then in March 2012 the parties rushed into and executed an Interest Purchase Agreement (the "IPA"), which went down the road of consummating a purchase and sale, but which did not actually *effect* a purchase and sale because (i) the membership interests to be sold had yet to be created, and (ii) various closing conditions had to be effected, in particular with respect to a highly problematical loan Derby had gotten to finance their purchase. (Notably, if Derby's representatives *really* thought Derby had purchased a majority ownership interest in Trinity at any time, why did they fail to make required SEC filings related to that ownership???)

Immediately after the IPA was entered into, Trinity's legal counsel, prepared the required amendment to Trinity's operating agreement to consummate the transaction and forwarded it to Derby. Derby didn't respond until May 7, admitting that it had been put on the "back burner" while Derby engaged in further due diligence. Trinity's counsel then re-sent Derby the draft operating agreement. And that would be the end of it. Derby never took actions required to consummate the deal, including finalizing the operating agreement or satisfying the closing conditions. Why? Because Derby probably realized that, notwithstanding its members' purported "skills and expertise" they didn't have what it took to create enough value in GEE in order to be able to pay off the $1.8 million delayed purchase price installment due in December 2013. Instead they apparently opted to attempt to raise financing (and thereby earn finder commissions) for LEED to take Derby and/or Trinity out. When the Trinity/LEED transaction was finally effected, more than four months after the Trinity/Derby unconsummated transaction, Trinity agreed to purchase Derby's purposely undefined "interest" in Trinity for $750,000, yielding Derby a 100%+ return on the $250,000 of its own money it had invested in the deal for less than a year. In short, Derby opted to take a quick $250,000 profit rather than risk a $500,000 loss due to their ever increasingly evident prospective inability to enhance GEE share value. (Notwithstanding Derby's recitation in the Complaint of GEE deals they had teed up— which may or may not be true— the fact is they never closed a single deal, for GEE or, to Movants' knowledge, anyone else in the entire year they were in business).

## II.  MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM.

### A.  Legal Standard.

Under FRCP 8(a)(2) a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  In addition, Federal Rule of Civil Procedure 9(b) provides that "the circumstances constituting fraud or mistake shall be stated with particularity."  To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory.  Nonetheless, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.  *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005); *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir. 1993). Pleadings based on mere conclusions of fact and law are also legally insufficient.  *Place v. Shepherd*, 446 F.2d 1239, 1244 (6th Cir. 1971).  "A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the complaint's framework, they must be supported by factual allegations."  *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009).  The allegations of the complaint "must be enough to raise a right to relief above the speculative level…  and state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, (2007). S*ee also, Ass'n of Cleveland Firefighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).  "Determining whether a complaint states a plausible claim for relief will…  be a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra,* at 1949.

In addition, under Rule 9(b) Plaintiffs have an even higher pleading standard in all allegations of fraudulent conduct.  The Sixth Circuit has held that this requires a plaintiff to

plead, at a minimum, "the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-162 (6th Cir. 1993) (quoting *Ballan v. Upjohn Co.*, 814 F. Supp. 1375, 1385 (W.D. Mich. 1992)). "The heightened pleading standard is also designed to prevent "fishing expeditions", to protect defendants' reputations from allegations of fraud, and to narrow potentially wide-ranging discovery to relevant matters." *Chesbrough v. VPA, P.C.* 655 F.3d 461, at 467 (6th Cir. 2011), citing *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.* 501 F.3d 493, 503 (6th Cir. 2007).

  **B.**  **Argument.**

  Plaintiffs purport to allege five claims against Movants— (i) Count I— Breach of Written Contract; (ii) Count III— Nullification and Recession [sic] of Contract; (iii) Count IV Punitive Damages for Fraud [sic] Inducement to Contract, (iv) Count VI— Equitable Estoppel, and (v) Count VII— Multiple Violations of Racketer [sic] Influeced [sic] and Corrupt Organization [sic] Act.

  1.  **<u>Breach of Written Contract</u>**.  Plaintiffs include Movants in the caption to Count I as being defendants liable under that Count, but nowhere in the Complaint do Plaintiffs identify the written contracts to which Movants were parties.  Accordingly, Plaintiffs' breach of contract claim must be dismissed.

  2.  **<u>Recession [sic] of Contract</u>**  Presumably, Plaintiffs mean "rescission". Rescission, as well as punitive damages (alleged in Count IV), are remedies rather than claims.  Plaintiffs can keep their powder dry until it comes time to discuss jury instructions a couple years down the road.  Movants note that Plaintiffs' claim that under the "long-established law of Kentucky" they can get both breach of contract damages *and* punitive damages (¶ 72) is

5

completely wrong. *See*, for example, *LV Ventures, LLC v. Schott* (Ky. App. 2012), available on Casemaker. "It is a firmly entrenched rule that a party may not recover upon both claims of fraudulent inducement and breach of contract…..An award of damages upon both claims of fraudulent inducement and breach of contract is clearly improper." [citing *Hampton v. Suter,* 330 S.W.2d 402, 406 (Ky. 1959)].

   3. **<u>Fraudulent Inducement</u>**. [Mr. Simmons only] In order to prevail on a fraud claim Plaintiffs must establish six elements by *clear and convincing* evidence: (i) material misrepresentation, (ii) which is false, (iii) known to be false or made recklessly, (iv) made with inducement to be acted upon, (v) acted in reliance thereon, and (vi) which causes injury. *United Parcel Service Co. v. Rickert,* 996 S.W.2d 464, 468 (Ky 1999), and *Wahba v. Don Corlett Motors, Inc.,* 573 S.W.2d 357, 359 (Ky. App. 1978). Where the proven facts or circumstances merely show inferences, conjecture, or suspicion, or such as to leave reasonably prudent minds in doubt, it must be regarded as a failure of proof to establish fraud. *Goerter v. Shapiro*, 254 Ky. 701, 72 S.W.2d 444 (1934). Similarly, "[t]he very essence of actionable fraud or deceit is the belief in and reliance upon the statements of the party who seeks to perpetrate the fraud. Where the plaintiff does not believe the statements-or where he has knowledge to the contrary-recovery is denied." *Wilson v. Henry*, 340 S.W.2d 449, Ky. 1960 (internal citations omitted).

  Plaintiffs' claim of fraudulent inducement is made in ¶ 69 where Plaintiffs allege that "Defendants…..never had any intention of paying for the Plaintiffs [sic] interest in Trinity/Delaware…." This is directly contradicted by Trinity's pledge to Derby of a $721,000 payment owed it by LEED at the same time as Trinity owed Derby its payments. Plaintiffs admit this claim destroying allegation in ¶46(f) (referencing the Pledge Agreement from Trinity to Derby Job included as Appendix 18 to the Complaint) and the requirement in the Pledge

6

Agreement that LEED make the payment due thereunder *directly* to Derby Job (see Section 2 of the Pledge Agreement).  Movants also note Plaintiffs' allegation in ¶ 91 that the Defendants attempted to "induce numerous individuals to invest in LEED and or loan it money or fund it in a manner to **allow it to purchase Plaintiffs' [sic] interest in Trinity/Delaware**…" [Emphasis added]  Defendants further note Plaintiffs' assertion in ¶ 75 that for the 2 ½ month period from the alleged breach of their payment agreement through the date of filing their Complaint that LEED and Plaintiffs were in weekly communication respecting payment of the amounts due Plaintiffs.  Notably absent is an allegation that there was *any* communication between Plaintiffs and Trinity during that period, i.e. Plaintiffs were very well aware their payment would source from LEED – not Trinity.  Plaintiffs further note in their "Preface" [bottom of p. 10] that Plaintiffs were "long-time friends and acquaintances" of Schroering, the "organizer and manager" of LEED.

From the foregoing it's obvious that Plaintiffs were fully aware that Trinity did not have the funds to pay Derby, but that payment was to be made from funds coming directly from LEED in respect of *its* payment obligations to Trinity, the owner of whom was a longtime friend of numerous members of Derby.  And what, exactly, was Movants' "fraudulent scheme"?  To just not pay Derby?  Plaintiffs may enjoy a breach of contract claim, but their fraud claim is simply implausible and should be dismissed.

    4.    **Equitable Estoppel**.  "Equitable estoppel is a defensive doctrine founded on the principles of fraud, under which one party is prevented from taking advantage of another party whom it has falsely induced to act in some injurious our [sic] detrimental way."  *Ping v. Beverley Enterprises, Inc.* 376 S.W.3d 581, 594-595 (Ky. 2012).  Simply put, equitable estoppel is an affirmative defense to a claim.

Plaintiffs Count VI is entitled "Equitable Estoppel" and makes various allegations as to (i) "the total and complete involvement" of Anthony Huff; (ii) their due diligence as to Huff's involvement, (iii) a ¶ 83 that is simply incoherent, (iv) Plaintiffs' relying on Movants' "conduct to its [sic] detriment", and (v) finally, a summary conclusion that they were damaged by Movants' conduct and Plaintiffs' reasonable reliance thereon. Movants are unclear why Plaintiffs have alleged this as a cause of action, but would note that if it's to be construed as a fraud claim of some kind, it fails to satisfy the 9(b) pleading requirements. Therefore this Count should be dismissed for failure to state a claim.

    5.    **Civil RICO.** Plaintiffs' RICO claim is largely incoherent, and when coherent, simply reveals Plaintiffs' lack of understanding of civil RICO and basic business law.

This claim appears to be as follows:

(i) That LEED and Trinity are jointly the RICO "enterprise". Complaint ¶ 88, (hereafter, the "LT Enterprise".)

(ii) That the individual defendants used the LT Enterprise in the "purloining of the Plaintiff's rightful ownership interest in the assets of Trinity/Delaware, which included the aforementioned shares of GEE stock." Complaint ¶ 90.

(iii) That the individual defendants attempted to defraud investors to invest in or loan money to LEED to allow LEED to purchase Plaintiffs' [sic] interest in Trinity/Delaware. Complaint ¶ 91.

(iv) That LEED's 13D filing announcing its beneficial ownership of a controlling interest in GEE shares falsely indicated LEED owned such GEE shares, and was made for the purpose of fraudulently inducing such potential investors/lenders to give money to LEED. Complaint ¶ 91.

  (v)  That as a result of the false filings the value of the GEE shares was substantially damaged between the time of the false filings and the filing of the Complaint, thereby damaging Plaintiffs. Complaint ¶ 93.

18 USC §1964(c) provides a private right of action to "any person injured in his business or property by reason of a violation of §1962(c), which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate… in the conduct of such enterprises' affairs through a pattern of racketeering activity". The Sixth Circuit has stated that to state a RICO claim plaintiffs must plead the following elements: (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. *Moon v. Harrison Piping Supply,* 465 F.3d 719, 723 (6th Cir. 2006).

Plaintiff has failed to adequately allege the elements required to advance a RICO claim.

  (a)  <u>No nexus with "interstate commerce"</u>. Plaintiffs have failed to identify how the RICO enterprise was engaged in interstate commerce, or activities affecting interstate commerce.

  (b)  <u>No "enterprise"</u>. The most charitable analysis of the Complaint is that Plaintiffs are alleging an "association-in-fact" enterprise. The Sixth Circuit has held that a RICO enterprise must have (i) an ongoing organization, with some sort of framework or superstructure for making and carrying out decisions; (ii) that the members of the enterprise functioned as a continuing unit with established duties; and (iii) that the enterprise was separate and distinct from the pattern of racketeering activity in which it engaged. *United States v. Chance*, 306 F.3d 356, 372 (6th Cir. 2002). With respect to "association-in-fact" RICO enterprises, the U.S. Supreme Court has stated that "an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity

9

sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States,* 556 U.S. 938, at 946 (2009). The Plaintiff must show "a continuing unit that functions with a common purpose." *Id* at 949. The Sixth Circuit has further stated that an association-in-fact enterprise "require[s] a certain amount of organizational structure which eliminates simple conspiracies from the Act's reach." *VanDenBroeck v. CommonPoint Mortg. Co.,* 210 F.3d 696, 699 (6th Cir. 2000).

Plaintiffs fail to allege facts supporting the LT Enterprise is an association-in-fact, rather than merely two separate entities engaging in a very common commercial transaction or, at worst, a simple conspiracy for a single transaction. They fail to allege requisite illegal purposes, structure, relationships, or longevity. It's self-evident that the sole purpose of LEED's relationship with Trinity was the purchase and sale of the GEE shares, rather than a joint purpose to deprive Plaintiffs of its unconsummated, make-believe, prospective indirect interest in the GEE shares.

(c) No "racketeering activity". Plaintiffs fail to identify and allege RICO predicate acts conducted through the LT Enterprise. They do allege some acts they claim are wrongful, but neither satisfies RICO pleading requirements. (See 18 USC 1961(1). First is that their ownership interest in the assets of Trinity was "purloined." Second is that the LT Enterprise attempted to defraud potential investors in or lenders to LEED by filing a false Form 13D.

As to the first, under KRS 275.240(1) members in a limited liability company do not enjoy *any* ownership rights in company property. Even if the Trinity/Derby JOB transaction had ever been consummated, Derby JOB would not have enjoyed ownership rights in the GEE shares, and therefore cannot complain of any interest in GEE shares being "purloined." (Plaintiffs and their counsel are fully aware that the Class A membership interests contemplated

10

to be issued to Derby JOB were never issued, and Derby therefore never enjoyed either a direct or indirect interest in the GEE shares.)  All that happened here was that Trinity management exercised its authority to sell the GEE shares to LEED.  One way or the other, Plaintiffs have failed to identify what RICO predicate offense "purloinment" violates.

Second relates to Plaintiffs' claim that the RICO Defendants *attempted* to defraud potential investors into investing in LEED so LEED could buy Derby JOB's prospective interest in Trinity.  The problems with this are manifold.  First, it would not appear to be a purpose of the LT Enterprise, even if the LT Enterprise *was* an association-in-fact.  Second, Plaintiffs fail to remotely satisfy the Section 9(b) pleading requirements for fraud, and securities fraud is not even a RICO predicate.  Moreover, Plaintiffs fail to allege how Ms. Simmons is implicated in the fraud complained of.  Third, Plaintiffs' assertion that LEED's 13D was false because LEED did not actually own the GEE shares before it fully paid for them is logically and facially ludicrous. Securities & Exchange Commission rules require disclosure of *beneficial ownership* of the subject shares—it's irrelevant whether they are *fully* paid.  See 17 CFR 240.13d-3.  Further, failure to have fully paid for property is meaningless in the context of ownership, as anyone who has ever owned a house with a mortgage knows.  Plaintiffs' complaint here is highly disingenuous….Moody and Henderson owned *no* GEE shares and yet they properly filed Forms 13D as to their beneficial ownership of the Trinity GEE shares.

(d)     No "pattern".  Plaintiffs have failed to allege a "pattern of racketeering activity" consisting of at least two such acts within a ten-year period.  See 18 USC § 1961(5).  Even were the acts described above predicate acts, they fail to satisfy the "relationship" and "continuity" tests.  Within the numerous sorts of relationships that can constitute a pattern, two elements must be shown: "that the racketeering predicates are *related, and* that they amount to or pose a

11

threat of *continued* criminal activity." *Brown v. Cassens Transport Co.* 546 F.3d 347, 354 (6th Cir. 2008), *quoting H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 239 (1989). The relationship test is satisfied if the acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.,* supra at 240. Plaintiffs' purported predicate acts fail this test.

The continuity test is both a closed- and open-ended concept, referring to either a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. *See Brown, supra,* at 354, quoting *H.J., Inc.* at 241. "Closed-ended continuity can be shown "by proving a series of related predicates extending over a substantial period of time." *Id* at 354, citing *H.J., Inc.* at 242. Open-ended continuity may be established "if the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit." *Id.* Plaintiffs have failed to allege any facts suggesting either type continuity. If the LT Enterprise actually existed, it only existed to accomplish one alleged act, i.e. "purloining" Plaintiffs' Trinity interest.

Even were the attempts to raise money for LEED deemed LT Enterprise acts, they aren't related. They would have entirely different purposes, results, and victims than the alleged theft of business scheme.

(e) <u>No injury in business or property</u>. Plaintiffs allege they suffered damages because the trading price of GEE shares in an extremely thin market went down from the date the LEED 13D was filed to the date they filed their Complaint. Given the incoherence and missing parts of their RICO claim, it's impossible to know how that circumstance remotely yields them damages attributable to any RICO action of Movants.

Accordingly, Plaintiffs' have failed to state a RICO claim.

### III. **CONCLUSION**

For the reasons cited above, Movants request the Court to dismiss Plaintiffs' claims against Movants. A form of proposed order is attached.

|  |  |
|---|---|
| | /s/ Judson Wagenseller_____ |
| | Judson B. Wagenseller |
| | 11921 Brinley Ave., Suite 203 |
| | Louisville, KY  40243 |
| | (502) 410-6905 |
| January 9, 2013 | Fax (502) 410-6902 |
| | *Judwag@insightbb.com* |

13

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 9, 2013 I filed electronically Defendant's Motion to Dismiss through the ECF system, which sent notice of electronic filing to

J. Bruce Miller
Norma C. Miller
J. BRUCE MILLER LAW GROUP
Waterfront Plaza, 20th
325 W. Main Street
Louisville, KY  40202
*Counsel for Plaintiffs*

I hereby certify that on January 9, 2013 I sent via U.S. Mail a copy of the foregoing Motion to Dismiss to:

LEED HR, LLC
Michael Schroering
2650 Eastpoint Parkway, Suite 280
Louisville, KY  40223

General Employment Enterprises, Inc.
One Tower Lane, Suite 2200
Oakbrook Terrace, Illinois, 60181

Securities & Exchange Commission
100 F. Street N.E.
Washington, D.C.  20549


/s/ Judson B. Wagenseller_____
Judson B. Wagenseller