UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:12-CV-00850-TBR


DERBY CITY CAPITAL, LLC, *et al.*                                    Plaintiffs

v.

TRINITY HR SERVICES, *et al.*                                    Defendants


**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendants Judson Wagenseller, Tiffany Simmons, Brandon Simmons, Trinity HR Services, LLC, and Trinity HR, LLC's Motion to Dismiss (collectively "the Wagenseller Defendants"), (Docket No. 31), and Defendants LEED HR, LLC, and Michael K. Schroering's Motion to Dismiss (collectively "the Schroering Defendants"), (Docket No. 28).  Plaintiffs Derby City Capital, LLC, and Derby Capital JOB, LLC, have filed a combined Response to both Motions, (Docket No. 32), and the Wagenseller and Schroering Defendants have filed their respective Replies, (Docket Nos. 36 & 37, respectively).  This matter is now ripe for adjudication.  For the reasons that follow, the Wagenseller Defendants' Motion, (Docket No. 31), will be GRANTED IN PART and DENIED IN PART, and the Schroering Defendants' Motion, (Docket No. 28), will be GRANTED.


BACKGROUND

Plaintiffs initially filed his action on December 21, 2012, (*see* Docket No. 1), and thereafter filed a "First Amended and Verified Complaint" (Amended Complaint) on February 12, 2012, (*see* Docket No. 26). The remaining Defendants named in

Plaintiffs' Amended Complaint are Trinity HR Services, LLC (Trinity/Delaware); Trinity HR, LLC (Trinity/Kentucky); Brandon Simmons (Mr. Simmons); Tiffany Simmons (Mrs. Simmons); Judson Wagenseller (Wagenseller); LEED HR, LLC (LEED); and Michael Schroering (Schroering). [1] In their Amended Complaint, Plaintiffs allege nine counts against various combinations of these Defendants.

In Count I, Plaintiffs allege "breach of express contract or contract implied-in-fact" against all remaining Defendants. (Docket No. 26, at 46.) The contract alleged in Count I relates to an agreement between Plaintiffs and Trinity/Delaware "for the purchase of 70% interest in Trinity Delaware, whose only asset was 9,236,688 shares of GEE common stock." (Docket No. 26, at 46-47.) The parties refer to this agreement as "the Old Contract," as will the Court for purposes of this Opinion.

In Count II, Plaintiffs allege breach of contract against all remaining Defendants. (Docket No. 26, at 48.) The contract alleged in Count II relates to an agreement whereby Mr. Simmons, individually and in his capacity as a minority partner in Trinity/Delaware, and Schroering, individually and in his capacity as the organizer and manager of LEED, promised to purchase Plaintiffs' 70% interest in Trinity/Delaware for $750,000. The parties refer to this agreement as "the New Contract," as will the Court for purposes of this Opinion.

---

[1] Also named as Defendants are General Employment Enterprises, Inc. (GEE), and the United States Securities and Exchange Commission (SEC). Count X of Plaintiffs' Amended Complaint alleges common law negligence against GEE; Plaintiffs allege no specific claim against the SEC. In separately entered Opinions, the Court granted these Defendants' respective motions to dismiss, thereby dismissing the SEC and GEE from this action. (*See* Docket Nos. 40 & 42.)

In Count III, Plaintiffs allege "Punitive Damages for Fraud [sic] Inducement To Contract" against all remaining Defendants.  (Docket No. 26, at 49.)  Here, Plaintiffs allege that these Defendants "never had any intention of paying, in accordance with their contractual commitments, for the Plaintiffs['] interests in Trinity/Delaware, which amounted to 70% of the sole asset of Trinity/Delaware, namely 9,326,688 shares of GEE common stock."  (Docket No. 26, at 50.)  Plaintiffs further allege that "none of the Defendants had the financial capacity to write the checks in the amount of $750,000 that was required to pay the Plaintiffs in accordance with the contract they entered into with the Plaintiffs."  (Docket No. 26, at 50.)

In Count IV, Plaintiffs bring a promissory estoppel claim against Schroering, LEED, and Wagenseller.  (Docket No. 26, at 51.)  In this count, Plaintiffs claim that all Defendants "made repeated oral promises and assurances . . . that Mr. Schroering either individually or through LEED would advance sufficient money to purchase the interests of the Plaintiff[s] in Trinity/Delaware."  (Docket No. 26, at 52 (emphasis in original).)  Plaintiffs allege they have suffered damages "[a]s a direct and proximate result of the Defendants Mr. Schroering's and Mr. Wagenseller's assurances and promises, and the Plaintiffs' reasonable reliance thereon, and the failure of the Defendants Mr. Schroering and Mr. Wagenseller to fulfill their promises and meet their obligations to the Plaintiffs."  (Docket No. 26, at 52.)

In Count V, Plaintiffs bring an equitable estoppel claim against all remaining Defendants.   (Docket No. 26, at 52.)   Here, Plaintiffs allege that each of these Defendants: "exhibited conduct, including acts, language and silence that amounted to a representation and/or concealment of material facts of which it was aware and of which

the Plaintiffs were not aware.  Among those facts were [sic] that were effectively concealed was the total and complete involvement of one Anthony Huff [(Huff)] in the activities of Mr. Simmons and Mr. Schroering."  (Docket No. 26, at 53.)

In Count VI, Plaintiffs allege "Common Law Fraud Under the Law of Kentucky" against all remaining Defendants.  (Docket No. 26, at 54.)  In this count, Plaintiffs claim that Wagenseller made various misrepresentations that he knew were false and would deceive Plaintiffs, which Plaintiffs then relied upon to their detriment. They further claim that these misrepresentations were made willfully, wantonly, and with malicious disregard of their rights such that they are entitled to recover both compensatory and punitive damages.

In Count VII, Plaintiffs claim that all remaining Defendants engaged in a civil conspiracy against them. (Docket No. 26, at 56.)  Here, they "assert that the elements of a civil conspiracy under Kentucky law . . . have occurred and were perpetrated by the deliberate and intentional acts and failure to act by [the remaining Defendants." (Docket No. 26, at 56-57.)

In Count VIII, Plaintiffs allege "Multiple Violations of Racketer [sic] Influeced [sic] and Corrupt Organization Act" against all remaining Defendants and against nondefendant "W. Anthony Huff a/k/a 'The Huff Enterprise,'" whom Plaintiffs collectively refer to as "the RICO Defendants."  (Docket No. 26, at 57.)  Plaintiffs allege that Huff "for decades has operated 'The Huff Enterprise' in the form of a subterranean conspiracy to defraud individuals and entities all over America."  (Docket No. 26, at 57.)  According to Plaintiffs, the RICO Defendants have "on repeated

occasions . . . conspired to and did engage in mail and wire fraud in violation of 18 U.S.C. § 1341 or 1343."  (Docket No. 26, at 58.)  Plaintiffs further allege that the "RICO Defendants and Mr. Huff's very life itself (a/k/a 'The Huff Enterprises') as operated by the non-Defendant Mr. Huff were an 'enterprise' [and] [e]ach was created and existed as an entity engaging in or affecting interstate commerce."  (Docket No. 26, at 58.)  (The remaining allegations in Count VIII will be discussed more fully *infra* Part VIII.)

Finally, in Count IX, Plaintiffs allege "Multiple Violations of 17 CFR §240.10(B)(5)" against Schroering and Wagenseller.  (Docket No. 26, at 61.)  In essence, here Plaintiffs claim that Wagenseller and Schroering filed "fraudulent and deliberately incorrect" Schedule 13Ds with knowledge that those statements "were not truthful because [they] knew that Mr. Schroering and LEED did not own the shares of stock that they asserted in the filings, because Mr. Schroering had not paid for them." (Docket No. 26, at 62.)

## STANDARD

The Federal Rules of Civil Procedure require that pleadings, including complaints, contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint may be attacked for failure "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion to dismiss, the court will presume that all the factual allegations in the complaint are true and will draw all reasonable inferences in favor of the nonmoving party.  *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716

F.2d 1101, 1105 (6th Cir. 1983)).  "The court need not, however, accept unwarranted factual inferences."  *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  Instead, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).  That is, a complaint must contain enough facts "to state a claim to relief that is plausible on its face."  *Id.* at 570.  A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  If, from the well-pleaded facts, the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged— but has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

Additionally, the Rules require a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "The Sixth Circuit interprets Rule 9(b) as requiring plaintiffs to 'allege the time, place, and content of the alleged misrepresentation on which he or she relies; the fraudulent

scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003) (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993)).   In other words, the "complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (quoting *Gupta v. Terra Nitrogen Corp.*, 10 F. Supp. 2d 879, 883 (N.D. Ohio 1998)).   Rule 9(b)'s heightened pleading standard is "designed to prevent 'fishing expeditions,' to protect defendants' reputations from allegations of fraud, and to narrow potentially wide-ranging discovery to relevant matters." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466-67 (6th Cir. 2011) (citing *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 503 & n.11 (6th Cir. 2007), *and United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008)).

## DISCUSSION

The Court will address sequentially each of Plaintiffs' nine counts and the remaining Defendants' respective Motions to Dismiss those claims against them.

## I.  Count I - Breach of the Old Contract

Count I alleges "breach of express contract or contract implied-in-fact" against all remaining Defendants relative to the Old Contract, which refers to an agreement between Plaintiffs and Trinity/Delaware "for the purchase of 70% interest in Trinity/Delaware, whose only asset was 9,236,688 shares of GEE common stock." (Docket No. 26, at 46-47.)   In support of this claim, Plaintiffs cite to Appendices 1 through 15 to their Amended Complaint, which collectively amount to some 70 pages of

exhibits.[2] (*See* Docket No. 26-1 to -15.)  The agreement constituting what the parties refer to as the Old Contract appears to be embodied by Appendix 10 to Plaintiffs' Amended Complaint, which appears in the record at Docket No. 26-10.[3]

The Wagenseller Defendants[4] move to dismiss this count against them on three grounds:  (1) because only Trinity/Delaware was party to the Old Contract, only Trinity/Delaware could have breached that contract; (2) Plaintiffs have not alleged how that contract was breached; and (3) there is no viable cause of action for Plaintiffs'

---

[2]  "On a motion to dismiss, a court may accept 'matters outside the pleadings,' but in doing so it generally must treat the motion 'as one for summary judgment under Rule 56."  *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (quoting Fed. R. Civ. P. 12(d)).  Because the only exhibits referred to and considered are those attached to Plaintiffs' Amended Complaint, the Court need not treat Defendants' Motions as motions for summary judgment and, instead, will proceed under Rule 12.

[3]  The Court is not entirely clear regarding which document or documents constitute the "Old Contract" in relation to Count I.  In Count I, Plaintiffs reference only Appendices 1 through 15; they do not cite to a specific exhibit or document as evincing the agreement at issue in Count I.  (*See* Docket No. 26, at 46-47.)  Then, in their Response, Plaintiffs reference Appendices 1 through 13 and state that paragraphs 15 through 42 of their Amended Complaint "describe in exquisite detail the factual arrangements between the Plaintiffs and the Defendants."  (Docket No. 32, at 7.)  The Wagenseller Defendants seem to think the "Old Contract" refers to the March 2012 Interest Purchase Agreement attached as Appendix 14 to Plaintiffs' Amended Complaint.  (*See* Docket No. 31, at 3.) As best the Court can tell, where Plaintiffs state they "possessed a contract . . . with Trinity/Delaware for the purchase of 70% interest in Trinity/Delaware, whose only asset was 9,236,688 shares of GEE common stock," they refer to the letter agreement attached as Appendix 10 at Docket No. 26-10.  (*See* Docket No. 26, at 46-47.)  This conclusion is supported by Plaintiffs' narrative in paragraph 36 of their Amended Complaint, (*see* Docket No. 26, at 25), and by the fact that in their Response, Plaintiffs limit their reference to Appendices 1 through 13.  The Court notes that, regardless, both the letter agreement at Docket No. 26-10 and the Interest Purchase Agreement at Docket No. 26-14 are agreements between, and executed by, the Plaintiffs and Trinity/Delaware.  As such, the Court's reasoning relative to Count I would be the same using either as the agreement constituting the Old Contract.

[4]  The Schroering Defendants also move to dismiss Plaintiffs' breach-of-contract claims, but their argument appears to focus on Count II, perhaps because the text of Count I does not mention either Schroering or LEED.  (*See* Docket No. 28, at 3-4.)  The Court will address the Schroering Defendants as necessary relative to Count I but will reserve principal discussion of those Defendants' challenges to Count II for Part II *infra*.

claim against Wagenseller as the "aider and abettor" of the alleged breach.[5]  (Docket No. 31, at 7.)  In regard to Defendants' first challenge, Plaintiffs insist that although Trinity/Delaware and Trinity/Kentucky are LLCs, "neither has a 'mind of its own.'" (Docket No. 32, at 9.)  To this end, Plaintiffs posit that:

> LLCs are merely legal vehicles through which decisions of human beings are implemented.  There are only five human beings who could have participated in a decision to cause the two LLCs to breach the contract.  Certainly two of the five (namely Mr. Moody and Mr. Henderson of the Plaintiffs) didn't breach the contract. That leaves three human beings left to breach the contract (namely Mr. and Mrs. Simmons and Mr. Wagenseller)[.]

(Docket No. 32, at 9.)  (Plaintiffs, however, cite no authority for this proposition.)

This Court recently reaffirmed the tenet that "[a] contract is only binding upon the parties to a contract."  *Sudamax Industria e Comercio de Cigarros, Ltda v. Buttes & Ashes, Inc.*, 516 F. Supp. 2d 841, 845 (W.D. Ky. 2007).  As the Court further noted in *Sudamax*, "Kentucky law insulates agents from liability for acts done within the scope of [their] agency on behalf of a disclosed principal." *Id.* (quoting *Summit Petroleum Corp. of Ind. v. Ingersoll-Rand Fin. Corp.,* 909 F.2d 862, 868 (6th Cir.1990)). Similarly, and pertinent to the matter at hand, Ky. Rev. Stat. § 275.150(1) provides, in relevant part:

> [N]o member, manager, employee, or agent of a limited liability company, including a professional limited liability company, shall be personally liable by reason of being a member, manager, employee, or agent of the limited liability company, under a judgment, decree, or order of a court, agency, or tribunal of any type, or in any other manner, in this or any other state, or on any

---

[5] Because these Defendants' third argument is rendered moot by the Court's discussion of their other arguments, the Court will only address only their first and second contentions.

other basis, for a debt, obligation, or liability of the limited liability
company, whether arising in contract, tort, or otherwise.

In essence, Plaintiffs seek to hold Trinity/Kentucky; Mr. Simmons, in his capacity as manager and agent of Trinity/Kentucky and of Trinity/Delaware; Mrs. Simmons, in her capacity as manager of Trinity/Kentucky; Wagenseller, in his capacity as legal counsel for Trinity/Delaware; and Schroering, in his capacity as manager of LEED, each liable for breach of an express or implied contract that these Defendants were not party to; indeed, only Trinity/Delaware was a party to the contract alleged to have been breached in Count I.[6]  Given that Trinity/Delaware was the only Defendant party to the contract alleged to have been breached in Count I, that contract was not binding on any Defendant other than Trinity/Delaware—that is, Trinity/Delaware was the only Defendant that could have breached that contract.  *See Sudamax*, 516 F. Supp. 2d at 845.  Furthermore, Mr. Simmons is neither subjected to liability by his role as Trinity/Delaware's agent in negotiating the contract alleged in Count I, *see Sudamax*, 516 F. Supp. 2d at 846; *Summit Petroleum*, 909 F.2d at 868, nor by his role as Trinity/Delaware's manager, *see* Ky. Rev. Stat. § 275.150(1).[7]  Thus, the Court finds no

---

[6] As alluded *supra* note 3, this is true using either the letter agreement at Docket No. 26-10 or the Interest Purchase Agreement at Docket No. 26-14, which both expressly identified Trinity/Delaware as the contracting party and were executed by Mr. Simmons on behalf of Trinity/Delaware. Plaintiffs' reference to Appendices 1 through 15 of their Amended Complaint also does not affect this conclusion, as those documents evince only transactions or agreements between Plaintiffs and Trinity/Delaware, not the other Defendants in this case.  (*See* Docket Nos. 26-1 to -15)

[7] The Court notes that Plaintiffs failed to allege in either their Amended Complaint or in their Response that Mr. Simmons (or any other individual Defendant) should be liable under the alter ego theory of "piercing the corporate veil."  "A theory of liability that the corporate veil should be pierced must be plead in the complaint."  *Sudamax*, 516 F. Supp. 2d at 847 (citing *Morgan v. O'Neil*, 652 S.W.2d 83, 85 (Ky. 1983)); *see also Natural Res. & Envtl. Prot. Cabinet v. Williams*, 768 S.W.2d 47, 50-51 (Ky. 1989) ("A shareholder may be liable for a corporate debt either by piercing the corporate veil or by statutory authorization; a complaint which alleges neither is facially defective." (internal quotation marks omitted)).  Accordingly, the Court finds that Plaintiffs have waived any such argument.

plausible claim for relief for the claims alleged in Count I against any Defendant other than Trinity/Delaware.

For their second challenge, the Wagenseller Defendants argue that Plaintiffs have not alleged how the Old Contract was breached.  (Docket No. 31, at 7.)  Plaintiffs respond that they "have fully described the initial stages of the contract breach and the nature of its breach" in paragraphs 39 through 50 of their Amended Complaint.  (Docket No. 32, at 9.)  That breach, they maintain, "was enabled by Mr. Wagenseller's civil conspiracy with Mr. Schroering and his shell company, LEED."  (Docket No. 32, at 10.)  In this vein, Plaintiffs allege that "Wagenseller began an insidious and devious effort to undercut the Plaintiffs' position" and that Wagenseller "initiat[ed] the events resulting in the breach of the first contract between the Plaintiffs and Trinity/Delaware."  (Docket No. 32, at 10.)  The remainder of Plaintiffs' Response in this regard talks of how Wagenseller "was serving his 'ultimate' master and client, Mr. Huff," how Huff "reverted to his inner 'dark side' to 'find money,'" and how Huff's "*modus operandi* required that Mr. Wagenseller . . . initiate actions to purloin the Plaintiffs of their interest in Trinity/Delaware."  (Docket No. 32, at 10.)

In spite of the fact that both Plaintiffs' Response and paragraphs 39 through 50 of their Amended Complaint devote considerable time to attacking Wagenseller as "insidious," "truth-hiding," and "diabolical," and describing the "white-collar criminal activity" of nondefendant Huff, it appears to the Court that Plaintiffs have pleaded a plausible claim for relief for breach of either an express or implied-in-fact contract. Taking the relevant factual allegations in their Amended Complaint as true, and drawing all reasonable inferences in their favor, Plaintiffs have pleaded a claim against

Trinity/Delaware for breach of the agreement to purchase Plaintiffs' 70% interest in Trinity/Delaware, which the Court finds sufficient to survive a Rule 12(b)(6) motion to dismiss.

For these reasons, in regard to Count I, the Court will GRANT the Wagenseller Defendants' Motion to Dismiss relative to Defendants Wagenseller, Mr. Simmons, Mrs. Simmons, and Trinity/Kentucky, and will also GRANT the Schroering Defendants' Motion to Dismiss relative to both Defendants Schroering and LEED; however, the Court will DENY the Wagenseller Defendants' Motion to Dismiss relative to Defendant Trinity/Delaware.[8]

## II.     Count II - Breach of the New Contract

Count II alleges breach of contract against all remaining Defendants relative to the New Contract whereby Trinity/Delaware promised to purchase Plaintiffs' 70% interest in Trinity/Delaware for $750,000.  (Docket No. 26, at 48.)  The New Contract appears to the Court to be embodied by Appendix 17 to Plaintiffs' Amended Complaint, which appears in the record at Docket No. 26-17.  That agreement was entered into on September 12, 2012, between Plaintiff Derby JOB, LLC, and Trinity/Delaware. (Docket No. 26-17, at 2-3.)  That same day, Trinity/Delaware also entered into a "Pledge Agreement" with Plaintiff Derby Capital, LLC, which referenced and incorporated the New Contract.  (Docket No. 26-18.)  Under the Pledge Agreement, Trinity/Delaware pledged its right to receive $721,000 from LEED pursuant to a separate stock purchase agreement that had been entered into between LEED and

---

[8] Because Defendants have not challenged the enforceability of the Old Contract or argued whether that agreement should be characterized as express or implied-in-fact, the Court takes no position on these issues at this time.

Trinity/Delaware on August 21, 2012. The Pledge Agreement, which was acknowledged and agreed to by LEED, provided that "LEED . . . shall not make any payments on the [August 21 stock purchase agreement with Trinity/Delaware] other than as contemplated by the [New Contract] and this Pledge Agreement." (Docket No. 26-18, at 2.) In essence, Count II argues that the remaining Defendants "breached these written contracts by failing to purchase the Plaintiffs' interests as committed by their written promises and assurances." (Docket No. 26, at 49.)

> **A.** **Plaintiffs Have Stated a Plausible Breach-of-Contract Claim in Count II Against Trinity/Delaware But Have Failed to State a Viable Claim Against Mr. Simmons, Mrs. Simmons, Wagenseller, and Trinity/Kentucky.**

The Wagenseller Defendants argue that Count II must be dismissed as to Mr. Simmons, Mrs. Simmons, Wagenseller, and Trinity/Kentucky because only Trinity/Delaware was a party to the New Contract. (Docket No. 31, at 8.) Plaintiffs' Response largely ignores this challenge. (*See* Docket No. 32, at 12-14.) In fact, much of Plaintiffs' Response does not even sound in contract and, instead, talks of "theft" and "conspiracy" and accuses Wagenseller of acting at nondefendant Huff's behest to "orchestrate[] the banditry of Plaintiffs' asset by enabling Mr. Schroering's thievery of the Plaintiffs' asset." (Docket No. 32, at 13.) Plaintiffs' largely irrelevant argument in this regard does little to alter the facts that Count II is a breach-of-contract claim and that the only Defendant party to the New Contract was Trinity/Delaware. For the same reasons discussed *supra* Part I relative to the Old Contract, the Court finds that the New Contract was binding only on Trinity/Delaware and, thus, no Defendant except Trinity/Delaware could have breached the agreement to purchase Plaintiffs' 70% interest in Trinity/Delaware for $750,000. As such, in regard to Count II, the Court will

GRANT the Wagenseller Defendants' Motion to Dismiss relative to Defendants Wagenseller, Mr. Simmons, Mrs. Simmons, and Trinity/Kentucky, and DENY their Motion relative to Defendant Trinity/Delaware.

### B.    Plaintiffs Have Failed to State a Plausible Breach-of-Contract Claim in Count II Against the Schroering Defendants.

The Schroering Defendants, for their part, point out that "Plaintiffs have not alleged that LEED or Schroering entered into any contract with them other than potentially: (1) the Pledge Agreement, and (2) Schroering allegedly promising to make good on LEED's obligation to pay Trinity[/Delaware] $721,000 [pursuant to the August 21, 2012, stock purchase agreement between LEED and Trinity/Delaware]."  (Docket No. 28, at 3.)  The Schroering Defendants primarily contend that Count II must be dismissed on the basis that "Plaintiffs have not alleged that LEED breached the Pledge Agreement, because LEED has not breached it."[9]  (Docket No. 28, at 3.)  They reason that under the Pledge Agreement, LEED simply agreed not to pay Trinity/Delaware the $721,000 except as contemplated by the Pledge Agreement and the New Contract. "[B]ecause it is undisputed that LEED has not made any payments to Trinity[/Delaware]," LEED insists it has not breached the terms of the Pledge Agreement.  (Docket No. 28, at 3.)  Plaintiffs fail to respond to the Schroering

---

[9] The Schroering Defendants additionally argue that any verbal statements made by Schroering purporting to guarantee LEED's obligation (1) fails the Kentucky Statute of Frauds, Ky. Rev. Stat. § 371.010; (2) fails to allege any consideration; and (3) fails under the express merger clause of the Pledge Agreement. Plaintiffs do not respond to the Schroering Defendants' second argument regarding any alleged oral statements made by Schroering. (*See* Docket No. 32, at 12-14.)  Because the Court finds the Schroering Defendants' primary argument dispositive, their arguments regarding the enforceability of any alleged oral statements by Schroering need not be addressed further.  Nonetheless, the Court notes that any oral statements, commitments, guarantees, or otherwise allegedly made by Schroering to answer for the debt of LEED would likely run afoul of the Statute of Frauds' writing requirement for contracts to answer for the debt of another.  *See* Ky. Rev. Stat. § 371.010(4).

Defendants' principal contention that "Plaintiffs have not alleged that LEED breached the Pledge Agreement, because LEED has not breached it." (*See* Docket No. 32, at 12-14.)  Instead, Plaintiffs again raise a number of points irrelevant to their breach-of-contract claim (such as accusing Schroering of "thievery") before summarily concluding that "Mr. Schroering ha[s] breached the 'New Contract' by failing to pay the sums owed under it." (Docket No. 32, at 14.)  Upon reviewing their Amended Complaint, the Court finds that Count II must be dismissed relative to the Schroering Defendants for several reasons.

First, as discussed above, to the extent the "New Contract" refers to the September 12, 2012, agreement in which Trinity/Delaware agreed to pay Plaintiffs' $750,000 for Plaintiff's interest in Trinity/Delaware, that agreement is not binding on, or enforceable against, either LEED or Schroering, because neither LEED nor Schroering was a party to that agreement. (*See* Docket No. 26-17.)  Thus, because neither was not a party to the New Contract, neither could have breached the New Contract. *See, e.g.*, *Sudamax*, 516 F. Supp. 2d at 845.

Second, the Court agrees with the Schroering Defendants' contention that Plaintiffs have not alleged that LEED breached the Pledge Agreement.  "Under Kentucky law, a cause of action for breach of contract must state 'the contract, the breach and the facts which show the loss or damage by reason of the breach.'" *Shane v. Bunzl Distribution USA, Inc.*, 200 F. App'x 397, 402 (6th Cir. 2006) (quoting *Fannin v. Commercial Credit Corp.*, 249 S.W.2d 826, 827 (Ky. 1952)).  In the context of a Rule 12(b)(6) motion to dismiss, a complaint fails to state a claim for which relief can be

granted if it fails to state the contractual basis for the plaintiff's breach-of-contract claim. *Id.* The closest Plaintiffs come to identifying a breach in this regard is to state:

> . . . Mr. Schroering, individually and in his capacity as the organizer and manager of LEED entered into written contracts, promises, and assurances to Plaintiffs [to] purchase the 70% interest of the Plaintiff in Trinity/Delaware for the sum of $750,000. . . .
> . . . .
> Mr. Schroering, individually and as manager of LEED deliberately, knowingly and intentionally undertook a series of actions that are described hereinabove that breached these written contracts by failing to purchase the Plaintiffs' interest as committed by their written promises and assurances.

(Docket No. 26, at 48-49.)  But LEED made no promise to Plaintiffs via the Pledge Agreement to purchase Plaintiffs' interest in Trinity/Delaware; instead, LEED merely agreed not to make any payments on its separate stock purchase agreement with Trinity/Delaware except as contemplated by the New Contract and the Pledge Agreement.  (Docket No. 26-18, at 2.)  To allege a breach of this language, Plaintiffs would have to allege that LEED made payments on its stock purchase agreement with Trinity/Delaware in some manner inconsistent with either the Pledge Agreement or the New Contract.  Plaintiffs have not alleged that any such payments were made and, thus, have not alleged a breach of the terms of the Pledge Agreement.  Accordingly, the Court finds that Plaintiffs have failed to state a claim for which relief can be granted because they have failed to state any contractual basis for their breach-of-contract claim against these Defendants.

Third, even if Plaintiffs had pleaded sufficiently a breach of the Pledge Agreement by LEED, Plaintiffs certainly have pleaded no grounds on which Schroering could be personally liable for any obligation or debt of LEED simply because

Schroering was a member or manager of LEED or because he acted as LEED's agent relative to the Pledge Agreement.  *See* Ky. Rev. Stat. § 275.150(1) ("[N]o member, manager, employee, or agent of a limited liability company . . . shall be personally liable by reason of being a member, manager, employee, or agent of the limited liability company . . . for a debt, obligation, or liability of the limited liability company, whether arising in contract, tort, or otherwise."); *Sudamax.*, 516 F. Supp. 2d at 845 ("Kentucky law insulates agents from liability for acts done within the scope of [their] agency on behalf of a disclosed principal." (quoting *Summit Petroleum*, 909 F.2d at 868)); *see also supra* note 7.

For these reasons, in regard to Count II, the Court will GRANT the Schroering Defendants' Motion to Dismiss relative to both Defendants Schroering and LEED.

## III.    Count III - Fraudulent Inducement To Contract

Count III alleges that all remaining Defendants "never had any intention of paying, in accordance with their contractual commitments, for the Plaintiffs['] interests in Trinity/Delaware," as evidenced by "the fact that none of these Defendants had the financial capacity to write the checks in the amount of $750,000."[10]  (Docket No. 26, at 50.)  According to Plaintiffs, these Defendants made representations otherwise, either recklessly or in the absence of reasonable care, or despite "kn[owing] they would  be unable to meet this funding commitment."  (Docket No. 26, at 50.)  Plaintiffs assert that they relied on these representations to their detriment and, thus, are entitled to punitive

---

[10] Plaintiffs do not specify upon which of the several contracts their fraudulent inducement claim is based.  (*See* Docket No. 26, at 49-51.)  However, given Plaintiffs' reference to the figure "$750,000," the Court will presume that Count III relates to the New Contract, (Docket No. 26-17), the agreement whereby Trinity/Delaware promised to purchase Plaintiffs' 70% interest in Trinity/Delaware for $750,000.

damages because these Defendants fraudulently induced them to contract.  (Docket No. 26, at 51.)

> **A.  There Exists No Basis for Liability on Plaintiffs' Fraudulent Inducement Claim Relative to Any Defendant Except Trinity/Delaware and Mr. Simmons.**

The Court reads Count III, in essence, as alleging that the remaining Defendants induced Plaintiffs to enter into the New Contract despite having neither the intention nor the financial resources to perform the New Contract.  But, as the Court found *supra* Part II, the only Defendant who had any possible contractual obligation to Plaintiffs under the New Contract was Trinity/Delaware.   Further, the only other Defendant involved in executing the New Contract was Mr. Simmons acting as Trinity/Delaware's agent.   In this regard, the Court believes that, under Kentucky law, an agent for a disclosed principal may be personally liable where the agent commits fraud that induces another party to enter into a contract with the principal.  *See Brewer Mach. & Conveyor Mfg. Co. v. Old Nat'l Bank*, 248 F.R.D. 478, 482 (W.D. Ky. 2008) (citing, *e.g.*, *Young v. Vista Homes, Inc.*, 243 S.W.3d 352, 363 (Ky. Ct. App. 2007)). However, Trinity/Delaware and Mr. Simmons excluded, because the other Defendants had no contractual obligation to pay Plaintiffs $750,000 for the purchase of their interests, it follows that Plaintiffs' fraudulent inducement claim must fail against those Defendants. Those Defendants—Mrs. Simmons, Wagenseller, Trinity/Kentucky, LEED, and Schroering—quite frankly, could not have represented to Plaintiffs that they either intended or were in a position to pay Plaintiffs $750,000 when none of those Defendants were party to the New Contract and thus had no contractual obligation under that contract to pay Plaintiffs anything.  Moreover, Plaintiffs have not alleged

specifically that any of those Defendants were acting as agents on behalf of Trinity/Delaware.  Therefore, the Court finds no basis to conclude that Kentucky courts, based on these facts, would impose liability on Mrs. Simmons, Wagenseller, Trinity/Kentucky, LEED, or Schroering for fraudulently inducing Plaintiffs to enter into a contract with Trinity/Delaware.

> **B.**     **Plaintiffs Have Failed to State a Plausible Fraudulent Inducement Claim Against Trinity/Delaware or Mr. Simmons.**

Still, the Court's conclusions in the paragraph above notwithstanding, the Court finds that Plaintiffs have failed to state a plausible fraudulent inducement claim against any of the remaining Defendants, including Trinity/Delaware and Mr. Simmons. "Fraudulent inducement 'attends conduct prior to striking the express or implied contract and alleges that one party tricked the other into contracting. It is based on pre-contractual conduct which is, under the law, a recognized tort.'" *Lillard v. Univ. of Louisville*, 2012 WL 5878715, at *4 (W.D. Ky. Nov. 21, 2012) (quoting *Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 193 F.3d 415, 439 (6th Cir. 1999)).  Under Kentucky law, a fraud claim requires that a plaintiff establish six elements by clear and convincing evidence:  (1) a material misrepresentation, (2) which is false, (3) known to be false or made recklessly, (4) made with inducement to be acted upon, (5) acted in reliance thereon, and (6) causing injury.  *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999) (citing *Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 359 (Ky. Ct. App. 1978)).  In a claim for fraudulent misrepresentation, Kentucky courts have long held that:

> [F]raud cannot be predicated upon statements which are promissory in their nature when made and which relate to future actions or conduct, upon mere failure to perform a promise—

> nonperformance of a contractual obligation—or upon failure to fulfill an agreement to do something at a future time or to make good subsequent conditions which have been assured.   Such nonperformance alone has frequently been held not even to constitute evidence of fraud.

*Mario's Pizzeria, Inc. v. Fed. Sign & Signal Corp.*, 379 S.W.2d 736, 740 (Ky. 1964) (quoting 24 Am. Jur. *Fraud and Deceit* § 267); *see also C.A.F. & Assoc., LLC v. Portage, Inc.*, --- F. Supp. 2d ---, 2012 WL 6624733, at *17 (W.D. Ky. Dec. 19, 2012); *Reece v. Blevins*, 2003 WL 1251447, at *5 (Ky. Ct. App. Feb. 7 2003).  "However, a statement as to future conduct may form the basis for a misrepresentation claim if made with the intent to induce the other party to enter into a contract."  *Davis v. Siemens Med. Solutions, USA, Inc.*, 399 F. Supp. 2d 785, 800 (W.D. Ky. 2005).  In accordance with Fed. R. Civ. P. 9(b)'s heightened pleading requirements, this Court has held that "[w]hile it is not necessary to 'recite each minute detail,' a plaintiff is required to plead 'the time, the place, the substance of the false representations, the facts misrepresented, and the identification of what was obtained by the fraud.'"  *Miller v. Reminger Co.*, 2012 WL 2050239, at *7 (W.D. Ky. June 6, 2012) (quoting *Scott v. Farmers State Bank*, 410 S.W. 2d 717, 722 (Ky. 1966)); *see also United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003) ("In complying with Rule 9(b), a plaintiff, at a minimum, must allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.").

    After reviewing Plaintiffs' Amended Complaint, the Court finds that Plaintiffs have failed to sufficiently plead a material misrepresentation in connection with the formation of the New Contract apart from the express language of the agreement itself.

In fact, Plaintiffs have not alleged any misrepresentation other than whether "Defendants had the financial capacity to write the checks in the amount of $750,000 that was required to pay the Plaintiffs in accordance with the contract they entered into with the Plaintiffs." (Docket No. 26, at 50.) This is precisely the sort of fraud claim disallowed by the Kentucky Supreme Court in *Mario's Pizzeria, Inc. v. Federal Sign & Signal Corp.*, because it is entirely predicated upon the mere failure to perform a contractual obligation (*i.e.*, pay Plaintiffs $750,000) or upon the failure to fulfill an agreement to do something at a future time or to make good subsequent conditions that Plaintiffs allege were assured. *See* 379 S.W.2d at 740; *accord C.A.F. & Assoc.*, 2012 WL 6624733, at *17. Furthermore, Plaintiffs' conclusory allegation that "Defendants . . . never had any intention of paying" is just that—a conclusory allegation—and, as such, fails to satisfy Rule 9(b)'s heightened pleading requirement.

### C. Even if Plaintiffs Had Stated a Plausible Fraudulent Inducement Claim, the Economic Loss Rule Likely Would Bar that Claim.

Additionally, to the extent Plaintiffs rely on Trinity/Delaware's execution of the New Contract as constituting a material misrepresentation that Trinity/Delaware had the financial capacity to perform under that agreement, the Court finds that Plaintiffs' fraudulent inducement claim would likely be barred by the economic loss doctrine. Although the Court finds its reasoning *supra* Parts III.A & B dispositive of Plaintiffs' fraudulent inducement claim, because the parties raise the issue of the economic loss rule, the Court will briefly address its applicability.

The Kentucky Supreme Court recently adopted the economic loss rule in Kentucky; however, the Court declined to weigh in directly on the rule's impact on fraud claims. *See Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 733

(Ky. 2011) (holding that the economic loss rule's "application is not limited to negligence and strict liability claims but also encompasses negligent misrepresentation claims" but deferring decision on the rule's impact on fraud claims). Thus, Kentucky's highest court has not taken a position on whether the economic loss rule applies to fraud. In their Response, Plaintiffs cite this Court's decision in *Davis v. Siemens Med. Solutions, USA, Inc.*, 399 F. Supp. 2d 785 (W.D. Ky. 2005) (Heyburn, J.), to argue that the economic loss rule is inapplicable to bar their fraudulent inducement claim. (Docket No. 32, at 14.) However, since *Davis*, this Court has held that "[t]he economic loss doctrine precludes a plaintiff from recovering under a fraud theory when that claim is intertwined with a breach of contract claim." *Westlake Vinyls, Inc. v. Goodrich Corp.*, 518 F. Supp. 2d 955, 968 (W.D. Ky. 2007) (Russell, J.) (citing *Highland Stud Int'l v. Baffert*, 2002 WL 34403141, at *4-6 (E.D. Ky. May 16, 2002)). Here, to the extent Plaintiffs point to the New Contract as evincing a material misrepresentation by Trinity/Delaware that Trinity/Delaware had a certain financial capacity, the Court finds that Plaintiffs' fraudulent inducement claim is inextricably intertwined with their breach-of-contract claim. As such, based on this Court's decision in *Westlake Vinyls*, it appears that the economic loss rule would preclude recovery on Plaintiffs' fraudulent inducement claim. Ultimately though, the Court need not predict whether Kentucky courts would apply the economic loss rule in an instance such as this. Regardless of whether that rule would apply, and even assuming Plaintiffs' performance-related fraud claim would fall outside the scope of the economic loss rule, Plaintiffs nonetheless have failed to plead allegations sufficient to meet the heightened "clear and convincing" standard for fraud claims, *see, e.g.*, *Hardin v. Savageau*, 906 S.W.2d 356 (Ky. 1995),

and have failed to plead a material misrepresentation sufficient to satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b).

* * *

In sum, the Court reads Count III of Plaintiffs' Amended Complaint as seeking to transform a claim that, at best, sounds in breach of contract against one defendant into a claim for fraudulent inducement against seven defendants.  Because Plaintiffs and have failed to plead sufficient facts to satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b) and have failed to state a plausible claim of fraudulent inducement sufficient to satisfy Rule 12(b)(6), in regard to Count III, the Court will GRANT the Wagenseller and Schroering Defendants' respective Motions to Dismiss relative to all remaining Defendants.

## IV.   Count IV - Promissory Estoppel

In Count IV, Plaintiffs appear to claim promissory estoppel against Schroering, LEED, and Wagenseller.[11]  (Docket No. 26, at 51.)  Specifically, Plaintiffs claim that "[f]ollowing their breach of contract on October 5, 2012, to purchase Plaintiffs' interests in 70% of the assets of Trinity/Delaware, which totaled 6,528,682 shares of GEE common stock," these Defendants "made <u>repeated</u> oral promises and assurances

---

[11] It is unclear against whom exactly Plaintiffs claim promissory estoppel.  The heading for Count IV of their Amended Complaint asserts: "PROMISSORY ESTOPPEL as against Mr. Schroering, LEED, and Mr. Wagenseller."  (Docket No. 26, at 51.)  While one of the paragraphs that follows also mentions Mr. Simmons, Mrs. Simmons, Trinity/Delaware, and Trinity-Kentucky, (*see* Docket No. 26, at ¶ 86), the bulk of Count IV focuses entirely on Schroering, (*see id.* at ¶¶ 86.a, 87, 89).  Then in their Response, Plaintiffs seem to scatter their accusations against Mr. Simmons, Mrs. Simmons, Wagenseller, and Schroering. (*See* Docket No. 32, at 19-20.)  Because Plaintiffs' Amended Complaint specifically addresses Count IV "as against Mr. Schroering, LEED, and Mr. Wagenseller," and because the Defendants have treated it as such in their respective Motions, the Court will follow the express language of the Amended Complaint and assume this Count is limited to Schroering, LEED, and Wagenseller.  Regardless, the Court's reasoning would apply with equal force relative to the other remaining Defendants as well.

(<u>virtually every week following October 5, 2012 to the day of the filing of this litigation</u>) to the Plaintiffs . . . that Mr. Schroering either individually or through LEED would advance sufficient money to purchase the interests of Plaintiffs in Trinity/Delaware." (Docket No. 26, at 51-52 (emphasis in original).)

Under Kentucky law, the four elements of promissory estoppel are "(1) a promise; (2) which the promisor should reasonably expect to induce action or forbearance on the part of the promise; (3) which does induce such action or forbearance; and (4) injustice can be avoided only by enforcement of the promise." *Bergman v. Baptist Healthcare Sys., Inc.*, 344 F. Supp. 2d 998, 1003 (W.D. Ky. 2004) (quoting *Res-Care, Inc. v. Omega Healthcare Investors, Inc.*, 187 F. Supp. 714, 718 (W.D. Ky. 2001)).   Additionally, the promisee's reliance on the promise must be justified.  *See Butler v. Progressive Cas. Ins. Co.*, 2005 WL 1009621, at *4 (W.D. Ky. 2005); *FS Invs., Inc. v. Asset Guar. Ins. Co.*, 196 F. Supp. 2d 491, 507 (E.D. Ky. 2002); *see also McCarthy v. Louisville Cartage Co.*, 796 S.W.2d 10, 12-13 (Ky. Ct. App. 1990).  But "promissory estoppel is not designed to give a party to a negotiated contract a 'second bite at the apple in the event it fails to prove breach of contract.'"  *Miller*, 2012 WL 2050239, at *9 (quoting *Gen. Aviation, Inc. v. Cessna Aircraft Co.*, 915 F.2d 1038, 1042 (6th Cir. 1990)).  Stated another way, "because promissory estoppel is not intended to provide an alternative to a breach of contract claim, where a contract exists on the subject matter of the alleged promise sought to be enforced, a claim for promissory estoppel is not cognizable." *Jan Rubin Assocs., Inc. v. Housing Auth. of Newport*, 2007 WL 1035016, at *14 (E.D. Ky. Mar. 30, 2007) (referencing *Shane*, 200 F. App'x at 404; *Davis*, 499 F. Supp. 2d at 799; *Tractor & Farm Supply, Inc. v. Ford*

*New Holland, Inc.*, 898 F. Supp. 1198, 1205 (W.D. Ky. 1995)).  Thus, "estoppel cannot be the basis for a claim if it represents the same performance contemplated under a written contract."  *Shane*, 200 F. App'x at 403 (quoting *Tractor & Farm Supply*, 898 F. Supp. at 1205).

Accordingly, in applying Kentucky law, the Sixth Circuit holds that "a promissory-estoppel claim cannot be based upon a performance that is contractually required," reasoning that "it is a 'widely accepted principle that promissory estoppel is applicable only in the absence of an otherwise enforceable contract.'"  *Id.* at 404 (quoting *Heating & Air Specialists, Inc. v. Jones*, 180 F.3d 923, 934 (8th Cir. 1999)).  Both this Court and the Eastern District of Kentucky have since adhered to this interpretation of Kentucky law.  *See, e.g.*, *Bus. Payment Sys., LLC v. Nat'l Processing Co.*, 2012 WL 6020400, at *16 (W.D. Ky. Dec. 3, 2012); *Pixler v. Huff*, 2012 WL 3109492, at *13 (W.D. Ky. July 31, 2012); *Hesco Parts, LLC v. Ford Motor Co.*, 2009 WL 854362, at *8 (W.D. Ky. Mar. 30, 2009); *Jan Rubin*, 2007 WL 1035016, at *14.  Therefore, where there is a written contract, the enforceability of which is not in question, this Court has consistently dismissed promissory estoppel claims that are based on the same performance as is contemplated by the written agreement.  *E.g.*, *Gonzalez v. Imaging Advantage, LLC*, 2011 WL 6092469, at *2 (W.D. Ky. Dec. 7, 2011); *Owensboro Mercy Health Sys., Inc. v. Willis N. Am., Inc.*, 2009 WL 1405172, at *5 (W.D. Ky. May 18, 2009).

In their Response, Plaintiffs insist that it is premature to dismiss this count until it is determined whether either the Old Contract or the New Contract is enforceable.  To this end, Plaintiffs cite this Court's decision in *Brewer v. Branch Banking & Trust*

*Corp.*, 2005 WL 2100995, at *2 (W.D. Ky. Aug. 26, 2005) (Heyburn, J.), to suggest that they should have the opportunity to proceed with discovery on their promissory estoppel claim alongside their breach-of-contract claim.  (*See* Docket No. 32, at 18-20.)  Plaintiffs further propose that if Defendants will admit to the enforceability of both the Old Contract and the New Contract, Plaintiffs will agree to withdraw their promissory estoppel claim.  (Docket No. 32, at 19-20.)  Otherwise, they maintain that "(1) the non-existence of a promissory estoppel claim is predicated upon the existence of an express or implied-in-fact contract; and (2) the Plaintiffs cannot dismiss a potential promissory estoppel claim against the individuals Mr. and Mrs. Simmons and/or Mr. Wagenseller and/or Mr. Schroering that would otherwise be potentially voided by a corporate 'veil' argument."[12]  (Docket No. 32, at 20.)

The Court disagrees with both of Plaintiffs' contentions and finds that their promissory estoppel claim must be dismissed as a matter of law.  In regard to their first point, the Court finds Plaintiffs' cited authority, *Brewer*, inapposite to this case in light of several decisions that are both more recent and significantly more relevant to the case at hand.  For example, in *Owensboro Mercy Health Sys., Inc. v. Willis North America*, this Court dismissed a promissory estoppel claim before discovery was completed because the Court found as a matter of law that "the performance [plaintiffs] seek still is 'contemplated under the written contract,' and, therefore, cannot support a claim for promissory estoppel."   2009 WL 1405172, at *5.  Similarly, in *Gonzalez v.*

---

[12] Plaintiffs do not, however, actually make any argument for piercing the corporate veil in either their Amended Complaint or their Response.  In fact, this is the only mention of such an argument the Court can find in either.  As noted *supra* note 7, Plaintiffs have waived any such argument by failing to plead it.  *See, e.g.*, *Sudamax*, 516 F. Supp. 2d at 847 (citing *Morgan v. O'Neil*, 652 S.W.2d 83, 85 (Ky. 1983)) ("A theory of liability that the corporate veil should be pierced must be plead in the complaint.").

*Imaging Advantage, LLC*, this Court dismissed a promissory estoppel claim on a Rule 12(b)(6) motion in advance of discovery and before determining the enforceability of the contract underlying the plaintiff's breach-of-contract claims.  2011 WL 6092469, at *2.  There, the Court explained:

> [The plaintiff's] promissory estoppel claim fails because this claim is subsumed by his breach-of-contract claim. . . . [The plaintiff's] allegations that [the defendant] made promises not contained within the four corners of the written contract does not alter this conclusion. . . . The fact that [the defendant] made promises to [the plaintiff] that were not part of the contract is immaterial, given that the performance [sought] is the same performance bargained for in the contract.

*Id.*  The Court went on to address an argument mirroring the one Plaintiffs advance in this case:

> [The plaintiff] argues in the alternative that his promissory estoppel claim should survive in case the contract is "somehow deemed unenforceable." . . . Although [the defendant] failed to respond to this argument in its reply, this court nonetheless rejects [the plaintiff's] proposed basis for allowing his promissory estoppel claims to go forward.  Nowhere does he (or [the defendant]) argue that the contract is unenforceable, nor do they explain why it might be found to be. Such speculation is insufficient to survive a motion to dismiss.

*Id.*  And, additionally, just last year this Court continued to follow this approach in *Pixler v. Huff*, a case in which Defendant Wagenseller appeared as counsel of record in a civil action against Huff, the nondefendant whom Plaintiffs frequently refer to in this litigation.  2012 WL 3109492 (W.D. Ky. July 31, 2012).  In *Pixler*, this Court, again in the context of a Rule 12(b)(6) motion and prior to discovery, held:  "[The plaintiff] has asserted a breach of contract claim seeking recovery for the same failed performance on the part of [the defendant].  As such, [the plaintiff's] promissory estoppel claim fails as

a matter of law, and it must be dismissed." *Id.* at *13 (citing *Gonzalez*, 2011 WL 6092469, at *2).

The Court finds no reason to deviate from this approach here. It is clear from Plaintiffs' Amended Complaint that the basis of their promissory estoppel claim represents the same performance contemplated by the written agreements on which they base their breach-of-contract claims. Or, stated differently, Plaintiffs have asserted breach-of-contract claims seeking recovery for the same failed performance on which they base their promissory estoppel claim. The fact that Schroering, Wagenseller, or any other Defendant made promises or assurances to Plaintiffs that were not part of those contracts is immaterial, because the performance promised or assured is the same performance bargained for in the written contracts. As such, Plaintiffs' promissory estoppel claim fails as a matter of law and must be dismissed. For these reasons, in regard to Count IV, the Court will GRANT the Wagenseller Defendants and Schroering Defendants' respective Motions to Dismiss relative to all remaining Defendants.

## V.    Count V - Equitable Estoppel

Count V asserts equitable estoppel against all remaining Defendants. (Docket No. 26, at 52.) Here, Plaintiffs claim that these Defendants, including "Mr. Wagenseller . . . as co-conspirator with Mr. Huff for several decades," exhibited certain conduct that amounted to a representation or concealment of material facts of which they were aware and Plaintiffs were not. (Docket No. 26, at 53.) According to Plaintiffs, "[a]mong those facts were [sic] that were effectively concealed was the total and complete involvement of one Anthony Huff in the activities of Mr. Simmons and Mr. Schroering." (Docket No. 26, at 53.) Plaintiffs aver that in the initial stages of the their

business relationship with Trinity, they "were aware of [sic] that Mr. Huff was a 'consultant' to his son-in-law and daughter, Mr. Simmons and Mrs. Simmons, but were continuously led to believe that Mr. and Mrs. Simmons made the ultimate decisions regarding his participation in the operations of Trinity." (Docket No. 26, at 53.) "[T]o assure [themselves] of an arms-length transaction with Mr. Simmons that did not involve Mr. Huff," Plaintiffs claim that they requested to interview Mrs. Simmons "for the purpose of gaining assurances that Mrs. Simmons was an active and knowing participant with [Mr. Simmons] in the operation of Trinity/Delaware and Trinity/Kentucky." (Docket No. 26, at 53.) Plaintiffs further state that "Mr. and Mrs. Simmons acted with the full intention and/or expectation that the Plaintiffs would continue their working relationship with Trinity/Delaware and Trinity/Kentucky," and that Plaintiffs relied on this conduct to their detriment. (Docket No. 26, at 54.) Finally, Plaintiffs summarily conclude that "Mr. Wagenseller engaged in each of the actions set forth in this Count, in his capacity as counsel to and for Trinity/Delaware, Trinity/Kentucky, Mr. and Mrs. Simmons, Mr. Schroering, and LEED." (Docket No. 26, at 54.)

The Wagenseller Defendants brand Count V as "largely incoherent" and challenge this claim as failing to identify who concealed Huff's involvement, how Plaintiffs relied on that concealment to their detriment, and what position any Defendant should be estopped from asserting as a result of that concealment. (Docket No. 31, at 11.) The Schroering Defendants similarly argue that this claim fails to state a claim because Plaintiffs have not pleaded what conduct either LEED or Schroering should be estopped from taking that is inconsistent with their prior conduct. (Docket

No. 28, at 5.)  The Schroering Defendants also contend that Plaintiffs have failed to allege when and how either LEED or Schroering concealed any alleged involvement of Huff, what was concealed, how Plaintiffs relied on it, or how it damaged them. (Docket No. 28, at 5.)  Plaintiffs' Response ignores these arguments and, despite presenting an array of impertinent factual matters and indecorous name-calling (*e.g.*, referring to Schroering as "unwittingly mindless" and Wagenseller as "duplicitous"), offers little to elucidate their equitable estoppel claim.  (*See* Docket No. 32, at 20-23.)

"Equitable estoppel is a defensive doctrine founded on the principles of fraud, under which one party is prevented from taking advantage of another party whom it has falsely induced to act in some injurious our detrimental way."  *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 594-95 (Ky. 2012).  "The doctrine of equitable estoppel is predicated upon the theory that '[w]here one has, by a course of conduct, with a full knowledge of the facts with reference to a particular right or title, induced another, in reliance upon such course of conduct, to act to his detriment, he will not thereafter be permitted in equity to assume a position or assert a title inconsistent with such course of conduct, and if he does he will be estopped to thus take advantage of his own wrong.'" *S.R.D. v. T.L.B.*, 174 S.W.3d 502, 506 (Ky. Ct. App. 2005) (alteration in original) (quoting *Farmer v. Gipson*, 257 S.W. 1, 2 (Ky. 1923)).  As this Court has noted, equitable estoppel "is typically asserted to bar a party from raising a defense or from taking certain action."  *Brewer*, 2005 WL 2100995, at *2 n.1.  Under Kentucky law, equitable estoppel has two parts: (1) a material representation by one party, and (2) reliance by the other party.  *Ping*, 376 S.W.3d at 595.  The Kentucky Supreme Court recently outlined three elements for each of these two parts:

> The essential elements of equitable estoppel are (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. And, broadly speaking, as related to the party claiming the estoppel, the essential elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.

*Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 62 (Ky. 2010) (alteration omitted) (quoting *Sebastian-Voor Props., LLC v. Lexington–Fayette Urban Cnty. Gov't*, 265 S.W.3d 190, 194–95 (Ky. 2008)).

Thus, to establish the reliance portion of their equitable estoppel claim, Plaintiffs "would have to show three things on their part: (1) lack of knowledge or means of knowledge of the truth; (2) reliance, in good faith, based on something [Defendants] did or did not do or state; and (3) resulting action or inaction on the [Plaintiffs'] part that somehow changes their position or status for the worse." *See id.* Plaintiffs' Amended Complaint fails to establish any of these three elements. First, they have neither alleged nor can they show that they lacked the means of acquiring knowledge of the truth such as would render any actual reliance reasonable. *See id.* Based on the Court's reading of their Amended Complaint, "knowledge of the truth" for these purposes would mean knowledge of nondefendant Huff's involvement in Trinity/Delaware and/or Trinity/Kentucky's affairs. Although Plaintiffs may not have

subjectively suspected any involvement by Huff beyond that which they were aware, the fact remains that they knew of Huff's role as a consultant to Mr. Simmons and Mrs. Simmons.  (*See* Docket No. 26, at 53 ("In the initial stages of the working business relationship between the Plaintiffs and Trinity, the Plaintiffs were aware that Mr. Huff was a 'consultant' to his son-in-law and daughter, Mr. and Mrs. Simmons . . . .").) Second, Plaintiffs have not pointed to any particular conduct, whether act or omission, by any particular Defendant upon which Plaintiffs relied in good faith.  Instead, they have done nothing more than offer conclusory allegations that they relied on some vague, nonspecific conduct by Mr. and Mrs. Simmons.  Third, they have not pleaded any "resulting action or inaction on [their] part that somehow changes their position or status for the worse."  *See id.*

Moreover, the Court agrees with Defendants' contentions that Plaintiffs have not pleaded what position any Defendant should be estopped from asserting or what conduct they should be estopped from taking that is inconsistent with any prior position or conduct.  To this end, Plaintiffs do not specify what *equitable* relief they seek in their equitable estoppel count; rather, they expressly state that they are seeking monetary damages for "the failure of the named Defendants in this Count to meet their obligations to the Plaintiffs." (*See* Docket No. 26, at 54.)  This request for relief sounds no different than that in their breach-of-contract claims.

For these reasons, the Court finds that Plaintiffs have failed to state a plausible claim for relief on the theory of equitable estoppel.  As such, in regard to Count V, the Court will GRANT the Wagenseller Defendants and Schroering Defendants' respective Motions to Dismiss relative to all remaining Defendants.

## VI.     Count VI - Common Law Fraud

In Count VI, Plaintiffs assert a claim of common law fraud against all remaining Defendants.  (Docket No. 26, at 54.)  Here, Plaintiffs summarily state that "the facts detailed hereinabove clearly establish that a common law fraud has been conducted and perpetrated against them by the stated Defendants."  (Docket No. 26, at 54.)  Plaintiffs go on to state that though "Wagenseller is an attorney, he is still exposed to liability . . . because he was at all times counsel for the Defendant, Trinity/Delaware - and as such owed a duty to the owners of Trinity/Delaware, which included the Plaintiffs."  (Docket No. 26, at 55.)   Plaintiffs insist that their Amended Complaint "identifies various alleged misrepresentations" by Wagenseller that Wagenseller knew were false and "were deceiving the Plaintiffs."  (Docket No. 26, at 55.)  Plaintiffs also seek punitive damages on this claim, arguing that the alleged misrepresentations were willful, wanton, and with malicious disregard for their rights.

As discussed *supra* Part III relative to Plaintiffs' fraudulent inducement claim, to state a fraud claim under Kentucky law, a plaintiff must establish six elements by clear and convincing evidence:  (1) a material misrepresentation, (2) which is false, (3) known to be false or made recklessly, (4) made with inducement to be acted upon, (5) acted in reliance thereon, and (6) causing injury.  *Rickert*, 996 S.W.2d at 468; *Wahba*, 573 S.W.2d at 359.  "While it is not necessary to 'recite each minute detail,' a plaintiff is required to plead 'the time, the place, the substance of the false representations, the facts misrepresented, and the identification of what was obtained by the fraud.'"  *Miller*, 2012 WL 2050239, at *7 (quoting *Scott*, 410 S.W. 2d at 722); *see also Bledsoe*, 342 F.3d at 643 ("In complying with Rule 9(b), a plaintiff, at a minimum, must allege the

time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.").

Defendants argue that this count should be dismissed because, even if Plaintiffs had stated a fraud-in-the-inducement claim in Count III, they have failed to assert any other fraud claim, let alone one that satisfies the pleading requirements of Rule 9(b) or that gives the Defendants fair notice of what that claim is.  (Docket No. 31, at 13.) Plaintiffs respond to these challenges at some length and, in so doing, illuminate the bases of their Count IV common law fraud claim.  (*See* Docket No. 32, at 23-26.)

As to the Wagenseller Defendants, Plaintiffs' Response focuses almost entirely on nondefendant Huff.  Plaintiffs state that Huff informed them of a 2004 indictment and conviction for insurance fraud but that Huff misrepresented his other ongoing "legal infirmities":

> When directly confronted as to any further legal infirmities, Mr. Huff (**with a straight-face(!)**) offered there were none and assured Derby Capital members of his determination to atone for his mistakes.  This was followed by a plea for redemption from Derby. While an impressive redemptive plea it turned out to be an equally impressive performance of a **preposterous material misrepresentation of his STILL extant nationwide white-collar crime spree.**
> . . . .
> [Huff's] representations subsequently proved to be false.  They were comparable in magnitude and believability to a Jim and Tammy Faye Baker misrepresentation of 'marital fidelity' or by the astonishing revelations involving Bernie Madoff or the Enron executives.

(Docket No. 32, at 23-24 (all emphases in original).)  Plaintiffs then state in summation:

> Mr. Huff <u>misrepresented</u> that he was a reformed man who had
> previously sinned, but was now re-born and forever intending to
> live and work on the 'right hand of God.' . . . Correspondingly, Mr.
> Wagenseller's misrepresentation was by the *omission* of hiding
> behind the credibility of a legal degree.

(Docket No. 32, at 25 (all emphases in original).)

The Court need look no further to dismiss Plaintiffs' Count VI claim against the Wagenseller Defendants.  First, Plaintiffs allege no misrepresentation by Defendants Trinity/Delaware, Trinity/Kentucky, Mr. Simmons, or Mrs. Simmons.  Thus they have failed to state a plausible claim for relief against these Defendants sufficient to survive challenge under Fed. R. Civ. P. 12(b)(6) and 9(b).  Second, the bulk of the misrepresentations upon which Plaintiffs base their claim allegedly were made by Huff, who is not a party to this action.  Therefore, these allegations, even taken as true, are not relevant and have no direct bearing on this litigation.  Third, Count VI, even read in light of Plaintiffs' entire Amended Complaint, fails to meet the heightened pleading requirements of Rule 9(b), as Plaintiffs in no way have pleaded "the time, the place, the substance of the false representations, the facts misrepresented, and the identification of what was obtained by the fraud" as required by Kentucky law.  *See, e.g.*, *Scott*, 410 S.W. 2d at 722.  Fourth, Plaintiffs' Response does nothing to cure this deficiency.  The solitary mention of any named Defendant appears in Plaintiffs' statement that "Wagenseller's misrepresentation was by the *omission* of hiding behind the credibility of a legal degree."  (*See* Docket No. 32, at 25 (emphasis in original).)  Aside from failing to satisfy the specificity requirements of Rule 9(b), this statement offers nothing more than conclusory speculation, which is also insufficient to withstand a Rule

12(b)(6) motion.   For these reasons, the Court will GRANT the Wagenseller Defendants' Motion to Dismiss relative to Count VI.

As to the Schroering Defendants, Plaintiffs assert that "Mr. Schroering in conjunction with Mr. Wagenseller perpetrated an equivalent fraud" by "induc[ing] the Plaintiffs into believing he would pay for the purloined stock." (Docket No. 32, at 25-26.)   According to Plaintiffs, "[t]his misrepresentation resulted in a contractual arrangement by which that payment, in full, namely $750,000 was to occur by September 30, 2012." (Docket No. 32, at 26.)  This, they say, "induced the Plaintiffs to act by signing the contract and they've now been damaged." (Docket No. 32, at 26.)

Here, Plaintiffs do nothing more than regurgitate in Count VI their fraudulent inducement claim from Count III.  For the same reasons discussed *supra* Part III,  and because this count both fails to state a plausible claim for relief under Rule 12(b)(6) and fails to satisfy the specificity requirements of Rule 9(b), the Court will GRANT the Schroering Defendants' Motion to Dismiss relative to Count VI.

**VII.    Count VII - Civil Conspiracy**

Count VII alleges a civil conspiracy against all remaining Defendants.  (Docket No. 26, at 56.)  This count consists of four paragraphs in its entirety.  The first two paragraphs are devoted to establishing the cognizability of a civil conspiracy claim under Kentucky law.  (*See* Docket No. 26, at ¶¶ 104–105.)  The remaining two paragraphs state, in full:

> 106.    The Plaintiffs assert that the elements of a civil conspiracy under Kentucky law, as are set forth in this First Amended and Verified Complaint have occurred and were perpetrated by the deliberate and intentional acts and failure to act by Trinity/Delaware, Trinity/Kentucky, Mr. and Mrs. Simmons, Mr. Schroering, LEED and Mr. Wagenseller.

107.    As a direct and proximate result of the Defendants' conduct, the Plaintiffs' reasonable reliance thereon, and the failure of the Defendants to meet their obligations to the Plaintiffs, the Plaintiffs have suffered damages in an amount to be determined at trial and in a further mount [sic] to be determined at trial for additional costs, expenses and losses incurred as a result of the Defendants' conduct.

(Docket No. 26, at ¶¶ 106–107.)  Defendants argue that this claim must be dismissed because it amounts to nothing more than legal conclusions and because Plaintiffs fail to allege what was being conspired about or plead any facts indicating a conspiracy. Plaintiffs respond, stating that Defendants' challenge: "is utterly preposterous and doesn't deserve a response.  The inanity of this segment of their Motions to Dismiss should be denied 'out of hand.'"  (Docket No. 32, at 28.)

The Court finds that Plaintiffs' civil conspiracy claim must be dismissed for several reasons.  For one, the Court agrees with Defendants' arguments that Plaintiffs have pleaded little more here than mere conclusions—they simply have not pleaded sufficient facts to support this claim. As the Supreme Court stated in *Twombly*, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  550 U.S. at 555.  Second, Plaintiffs claims in Counts I through VI (which they incorporate by reference into Count VII) amount to little more than a breach-of-contract claim against Trinity/Delaware.   Even taking Plaintiffs' facts as true and drawing all reasonable inferences therefrom, they have not pleaded a plausible civil conspiracy claim against the remaining Defendants.  Third, for the reasons set forth *supra* in Parts III and VI of this Opinion, and *infra* in Parts VIII and IX, the Court will

dismiss the Plaintiffs' other tort claims of fraudulent inducement and common law fraud, as well as their claim for RICO violations and their claim brought under 17 C.F.R. § 240.10b-5. As such, there remains no underlying tort on which to base their civil conspiracy claim. For these reasons, the Court will GRANT the Wagenseller and Schroering Defendants' respective Motions to Dismiss relative to Count VII.

## VIII.   Count VIII - RICO Violations

In Count VIII, Plaintiffs allege multiple violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*, against all remaining Defendants as well as nondefendant Huff, whom Plaintiffs collectively refer to as the "RICO Defendants." (Docket No. 26, at 57.) The RICO Defendants, they say, "conspired to and did engage in mail and wire fraud . . . for the purposes of executing schemes to defraud and to obtain and maintain money by false pretenses." (Docket No. 26, at 57-58.) Plaintiffs assert that these mail and wire communications were used "to induce Plaintiffs to forward payments to the RICO Defendants, to forestall Plaintiffs' inquiry into the scheme, and to induce Plaintiffs' participation to their financial detriment." (Docket No. 26, at 58.) Plaintiffs further insist that "the RICO Defendants and Mr. Huff's very life itself (a/k/a "The Huff Enterprises") as operated by the non-Defendant Mr. Huff were an 'enterprise'" and that "[e]ach was created and existed as an entity engaged in or affecting interstate commerce apart from the pattern of racketeering activity alleged." (Docket No. 26, at 59.) "The actions of the RICO Defendants," Plaintiffs aver, "included multiple acts of mail and wire fraud that when known to their fullest extent will boggle the mind of any decent and law-abiding American citizen." (Docket No. 26, at 59.)

18 U.S.C. § 1964(c) provides a private right of action to "[a]ny person injured in his business or property by reason of a violation of section 1962."  Section 1962, in turn, outlines the activities prohibited under RICO:

> (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. . . .

> (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

It is unclear which of the activities prohibited by § 1962 form the basis or bases of Plaintiffs' claim in Count VIII.  Despite touching on the language of subsections (a) and (d), only subsection (c) is expressly referenced.[13]  (*See* Docket No. 26, at 58-61.)  However, the Court's reading of the Plaintiffs' Response suggests that they intend to assert claims under all four subsections.  (*See* Docket No. 32, at 29-35.)

---

[13] Plaintiffs do reference to "18 U.S.C. § 1962(4)," but that citation appears to be a typo intended to refer to "§ 1961(4)."  (*See* Docket No. 26, at ¶ 119.)

The Sixth Circuit holds that to state a RICO claim, a plaintiff must plead four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Heinrich v. Waiting Angels Adoptions Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006). "A plaintiff must allege each element to properly state a claim." *Heinrich*, 668 F.3d at 404. The remaining Defendants argue that this claim must be dismissed because Plaintiffs have failed to adequately allege any of the elements required to advance their RICO claim. Upon reviewing Plaintiffs' Amended Complaint, the Court agrees.

### A. Plaintiffs Have Failed to Adequately Allege Any Predicate Acts of Racketeering Activity.

Racketeering activity consists of acts that are indictable under any of the federal statutes listed in § 1961(1)(B), among which are mail and wire fraud in violation of §§ 1341 and 1343. Here, Plaintiffs specifically allege mail and wire fraud as the Defendants' predicate acts of racketeering activity.[14] (*See* Docket No. 26, at ¶¶ 110, 118; *see also* Docket No. 32, at 31.)

Mail fraud consists of "(1) a scheme to defraud, and (2) use of the mails in furtherance of the scheme." *Heinrich*, 668 F.3d at 404 (quoting *United States v. Jamieson*, 427 F.3d 394, 402 (6th Cir. 2005)). The elements of wire fraud are essentially

---

[14] In their Response, Plaintiffs also mention in passing "[m]ultiple additional predicate acts," including (1) financial institution fraud under § 1344; (2) obstruction of justice under § 1503; (3) racketeering under § 1952; (4) "engaging in monetary transactions in property derived from specified unlawful activity" under § 1057; and (5) "multiple violations of the Securities Act of 1934." (Docket No. 32, at 32.) However, none of these acts are mentioned in Count VIII of Plaintiffs' Amended Complaint, and Plaintiffs do not elaborate further on these allegations in their Response. (Additionally, the statute cited in item number 4,"18 U.S.C. § 1057," does not exist.) Therefore, the Court need not address these allegations further and, instead, will focus on the predicate acts of mail and wire fraud that Plaintiffs have expressly pleaded.

the same except that the wires, rather than the mails, must be used in furtherance of the scheme to defraud. *Id.* (citing *United States v. Daniel*, 329 F.3d 480, 486 n.1 (6th Cir. 2003)).  The first element, a "scheme to defraud," includes any plan or course of action through which someone uses false, deceptive, or fraudulent pretenses, representations, or promises in order to deprive someone else of money.  *Id.* (citing *Jamieson*, 427 F.3d at 402).  To establish a scheme to defraud, a plaintiff must also demonstrate *scienter* by showing that the defendant acted either with a specific intent to defraud or with recklessness with respect to potentially misleading information. *Id.* (citing *United States v. DeSantis*, 134 F.3d 760, 764 (6th Cir. 1998)).  "When pleading predicate acts of mail or wire fraud, in order to satisfy the heightened pleading requirements of Rule 9(b), a plaintiff must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  *Id.* (quoting *Frank*, 547 F.3d at 570). And although a RICO plaintiff is not required to plead or prove first-party reliance on an allegedly false statement, *see id.* at 404-05 (citing *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 648 (2008)), the plaintiff nonetheless "a plaintiff must show not only that the predicate act was a 'but for' cause of plaintiff's injuries, but also that it was a proximate cause," *id.* at 405 (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992).  In this sense, "[a] plaintiff must show 'some direct relation between the injury asserted and the injurious conduct alleged.'"  *Id.* (quoting *Holmes*, 503 U.S. at 268).

Plaintiffs assert, by way of their Response, that "[t]he fraudulent statements and the speaker were the repeated fabricated GEE SEC EDGAR filings created and filed by

Mr. Wagenseller on behalf of Trinity/Delaware and the Schroering Defendants beginning in August 2012 and carrying at least forward to December 2012."[15]  (Docket No. 32, at 31.)  Plaintiffs offer no further specifics as to the dates of these filings or to which of the 32 appendices to their Amended Complaint they refer; instead, they merely aver that "[t]he dates of the statements are contained in the filings, themselves, and they were fraudulent - as repeatedly described in the Verified Complaint."  (Docket No. 32, at 31.)  As best the Court can tell, the "fabricated GEE SEC EDGAR filings" to which Plaintiffs refer are the Schedule 13D filings attached to their Amended Complaint at Docket Nos. 26-16 (dated August  2012), 26-19 (dated September 2012), 26-20 (dated August 2012), 26-22 (dated November 2012), and 26-24 (dated September 2012).  Plaintiffs seem to allege that these Schedule 13D filings were fraudulent insofar as they misrepresented LEED's beneficial ownership of a controlling interest in GEE when in fact LEED had not yet paid for those shares.

As an initial matter, the Court notes that Plaintiffs do not plead, state, or otherwise mention with any specificity how either the mails or the wires were used in furtherance of a scheme to defraud.   Regardless, even assuming Plaintiffs had sufficiently pleaded the predicate acts of either mail or wire fraud, they have failed to show that those predicate acts were both a but-for and proximate cause of their injuries. *See Heinrich*, 668 F.3d at 405.  In terms of the injury alleged to have been suffered, Count VIII states that "[a]s a direct and proximate cause of the Defendants['] . . . actions, misrepresentations and activities, they caused the value of the GEE securities

_____

[15] Despite stating in their Amended Complaint that "these actions took place over a period of years," (Docket No. 26, at 59), Plaintiffs specify in their Response that these alleged predicate acts took place "beginning in August 2012 and carrying at least forward to December 2012," (Docket No. 32, at 31).

to substantially damages [sic] between the period of time of the false and misleading GEE SEC EDGAR filings and the Plaintiffs' necessary filing of this lawsuit, resulting in damages to the Plaintiffs."   (Docket No. 26, at 61.)   Then, in their Response, Plaintiffs summarily posit that *Heinrich*'s but-for test is met because they lost $500,000:

> With all due respect, when something is 'stolen' from you and the person who steals it is identified and others, whom [sic] owed a fiduciary duty to the victim participate and enable the theft - and the victim loses a minimum of $500,000 - that set of events, by themselves, qualify for the 'but for' test.

(Docket No. 32, at 31.)   Read in conjunction with the "Relevant Background Facts" section of their Amended Complaint, the Court interprets this assertion as appearing to relate to the injury claimed as a result of the breach of the Old Contract.   (*Compare* Docket No. 26, at 30, *with* Docket No. 32, at 31.)   Thus, *in toto*, Plaintiffs present two possible readings of their claimed injuries in regard to Count VIII:   (1) damage to the value of GEE securities between the filings of the allegedly fraudulent Schedule 13Ds, (*see* Docket No. 26, at 61), and (2) damages that correspond to those alleged in their breach-of-contract claims, (*see* Docket Nos. 26, at 30; 32, at 31).   Neither claim of injury satisfies *Heinrich*'s but-for and proximate cause requirements.

The first possible reading of Plaintiffs' claimed injuries in Count VIII—damage to the value of GEE securities—fails because, as discussed in the Court's separate Opinion addressing GEE's Motion to Dismiss, Plaintiffs never owned any shares of GEE stock.  (*See* Docket No. 42, at 4-5.)  Members of an LLC do not enjoy ownership rights in property owned by the LLC; instead, that property is owned by the LLC as an entity unto itself.  *See* Ky. Rev. Stat. § 275.240(1) ("Property transferred to or otherwise

acquired by a limited liability company shall be the property of the limited liability company and not the members individually."). Trinity/Delaware may have owned GEE stock, but Plaintiffs did not. That Plaintiffs may have been part owner of an LLC that itself owned GEE stock (*i.e.*, Trinity/Delaware) does not equate to Plaintiffs owning GEE stock. As such, Plaintiffs have no basis to claim an injury resulting from any alleged damage to the value of the GEE securities.

The second possible reading of Plaintiffs' claimed injuries in Count VIII—damages paralleling those alleged in their breach-of-contract claims—fails because those injuries are alleged to have occurred *before* the alleged predicate acts of filing fraudulent or misleading Schedule 13Ds. By definition, a "predicate act" is one "that must be completed before legal consequences can attach to it." Black's Law Dictionary 28 (2009). As noted above, while Plaintiffs are not required to plead or prove first-party reliance on the allegedly false statement, they nonetheless must show that the predicate act was both a but-for and proximate cause of their injuries. *See Heinrich*, 668 F.3d at 404-05. It simply does not follow that the filing of allegedly fraudulent Schedule 13Ds some months *after* the claimed injury was suffered could somehow be both the but-for and proximate cause of that injury. Therefore, Plaintiffs' RICO claim fails because they have failed to adequately allege the predicate acts of either mail or wire fraud.

## B.    Plaintiffs Also Have Failed to Adequately Allege a Pattern of Racketeering Activity.

Furthermore, even assuming Plaintiffs had adequately alleged predicate acts of racketeering activity that were both the but-for and proximate cause of their injuries,

they still have not sufficiently pleaded a "pattern of racketeering activity."  For this reason also, their RICO claim must be dismissed.

A pattern of racketeering activity requires, at minimum, two acts of racketeering activity within ten years of each other. 18 U.S.C. § 1961.  The Supreme Court and this Circuit further require that "[i]n order to show a 'pattern' of racketeering activity, a plaintiff must show 'that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity.'" *Heinrich*, 668 F.3d at 409 (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237–39 (1989)).  This requirement is referred to as the "relationship plus continuity" test.  *E.g.*, *id.*; *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 355 (6th Cir. 2008).  The "relationship" prong is satisfied by showing that the predicate acts have "similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Heinrich*, 668 F.3d at 409 (quoting *H.J. Inc.*, 492 U.S. at 240).  The "continuity" prong can be satisfied by showing either a "close-ended" or "open-ended" pattern.  *Id.*; *see Moon*, 465 F.3d at 724 ("Continuity may be established at the pleading stage by alleging facts of either closed- or open-ended racketeering activity.")  A close-ended pattern refers to a series of related predicate acts extending over a substantial period of time, whereas an open-ended pattern refers to a set of predicate acts that poses a threat of continuing criminal conduct extending beyond the period in which the predicate acts were performed.  *Heinrich*, 668 F.3d at 409-10 (citing *H.J. Inc.*, 492 U.S. at 241-42).

Even assuming the relationship prong is satisfied by the allegations in Plaintiffs' Amended Complaint, Plaintiffs cannot establish the continuity prong.   Plaintiffs

expressly disclaim a close-ended pattern here:  "Regarding the continuity segment, the instant case is 'obviously' an 'open-ended pattern (as opposed to a "close-ended pattern)."[16]  (Docket No. 32, at 34.)   Open-ended continuity applies where a RICO claim is brought before continuity can be established, in which case "liability depends on whether the *threat* of continuity is demonstrated."   *Heinrich*, 668 F.3d at 410 (quoting *H.J. Inc.*, 492 U.S. at 242).   In such a circumstance, "the plaintiffs must plausibly allege that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed."   *Id.*   In determining whether the predicate acts establish open-ended continuity, the Court must examine the specific facts of the case and consider the totality of the circumstances surrounding the commission of the alleged predicate acts.   *Id.* (citing *H.J. Inc.*, 492 U.S. at 242; *Brown*, 546 F.3d at 355).

    The facts here, viewed in the totality of the circumstances, do not establish open-ended continuity.   If the alleged predicate acts are mail and/or wire fraud in the filing of fraudulent Schedule 13Ds, and the purpose of those predicate acts was the "purloining of the Plaintiff's [sic] rightful ownership interest in the assets of

---

[16] Though the issue need not be addressed at length here, the Court notes that Plaintiffs' RICO claim also fails to present facts sufficient to establish close-ended continuity.   Despite disavowing the possibility of a close-ended pattern, Plaintiffs Amended Complaint alleges at best a mere five-month scheme to defraud them of a finite interest.   (*See* Docket No. 32, at 31 (stating in their Response filed April 8, 2013, that the fraudulent statements were the Schedule 13D filings "beginning in August 2012 and carrying at least forward to December 2012").)   In short, a scheme lasting no more than five months plainly is not of sufficient duration to establish a pattern of racketeering activity under a close-ended analysis.   *See, e.g.*, *Am. Eagle Credit Corp. v. Gaskins*, 920 F.2d 352, 354 (6th Cir. 1990) (six-month scheme not of sufficient duration to qualify as a close-ended pattern of racketeering activity); *Kyne v. Deloitte & Touche*, 12 F.3d 212, 1993 WL 498213, at *4 (6th Cir. 1993) (unpublished table decision) (fraudulent transactions occurring within several months of each other did not satisfy close-ended continuity requirement); *see also Manning v. Stigger*, 919 F. Supp. 249, 253 (E.D. Ky. 1996) ("No decisions have found a pattern in cases in which the predicate acts extended less than one year in a closed end scheme." (citation omitted)).

Trinity/Delaware," then those predicate acts were necessarily completed once LEED allegedly took control of GEE.   Thus, Plaintiffs' Amended Complaint alleges a necessarily terminable scheme, not unlike those the Sixth Circuit has previously found on numerous occasions as failing to establish open-ended continuity.

For example, in *Vemco, Inc. v. Camardella*, the Sixth Circuit held that allegations of a single fraudulent scheme (despite that it spanned some 17 months) involving a single criminal episode and a single victim were insufficient to establish open-ended continuity.   23 F.3d 129, 134 (6th Cir. 1994).   Similarly, in *Thompson v. Paasche*, the Sixth Circuit found that a single scheme involving the fraudulent sale of nineteen parcels of land did not establish the requisite continuity to state a viable RICO claim.   950 F.2d 306 (6th Cir. 1991).   In *Thompson*, the court reasoned:

> [The defendant's] fraudulent scheme was an inherently short-term affair. He had nineteen lots to sell. Once he had sold all of the lots, the scheme was over. It had to be, he had no more land to sell. Thus, his scheme was, by its very nature, insufficiently protracted to qualify as a RICO violation.

*Id.* at 311.   Also, in *Vild v. Visconsi*, the Sixth Circuit found that a plaintiff had failed to plead open-ended continuity where "the acts alleged amount[ed] at best to a breach of contract with a single customer."   956 F.2d 560, 569 (6th Cir. 1992).

Here, even taking the Plaintiffs' allegations as true and drawing all reasonable inferences in their favor, their RICO claim fails to present facts that would satisfy the continuity prong of RICO's pattern-of-racketeering test.   At best, their Amended Complaint alleges a mere five-month scheme to defraud them of a finite interest.   To use their term, the "purloining" of their interests was an inherently short-term affair, and once those interests had been "purloined," the scheme was complete.   Thus, the

racketeering activity Plaintiffs allege is insufficiently protracted to state a viable RICO claim and does not, by its nature, threaten repetition.  As such, Plaintiffs have failed to adequately plead a pattern of racketeering activity for their RICO claim.

* * *

For these reasons, the Court finds that Plaintiffs have failed to state a viable RICO claim against the remaining Defendants.  As such, the Court will GRANT the Wagenseller and Schroering Defendants' respective Motions to Dismiss relative to Count VIII.

## IX.    Count IX - Violations of 17 C.F.R. § 240.10b-5

Count IX asserts a private right of action under 17 C.F.R. § 240.10b-5 (Rule 10b-5) against Wagenseller and Schroering.  (Docket No. 26, at 61.)   Rule 10b-5 states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

The Securities and Exchange Commission promulgated Rule 10b-5 pursuant to its authority under § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b).  Although neither Rule 10b-5 nor § 10(b) expressly creates a private right of action, the

Supreme Court has held that a private right of action is implied under § 10(b).[17] *Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2301 (2011) (referencing *Superintendent of Ins. of N.Y. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 13 n.9 (1971)).

In order to state a private cause of action under Rule 10b-5, a plaintiff must establish six elements:  "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Janus*, 131 S. Ct. at 2301 n.3 (quoting *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008)). The Supreme Court has made clear that "*all* of the requirements . . . under Rule 10b-5" must be met in order to establish liability.  *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177 (1994).

Furthermore, the Sixth Circuit has consistently held that "[b]ecause § 10(b) claims sound in fraud, the pleading strictures of Federal Rule of Civil Procedure 9(b) apply."  *Ind. State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942 (6th Cir. 2009) (citing *Frank v. Dana*, 547 F.3d 564, 569–70 (6th Cir. 2008)). "Thus, the complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the  speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"

---

[17] The Supreme Court has stated, however, that "[c]oncerns with the judicial creation of a private cause of action caution against its expansion," warning that courts should give "narrow dimensions . . . to a right of action Congress did not authorize when it first enacted the statute and did not expand when it revisited the law." *Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.*, 552 U.S. 148, 165, 167 (2008)

*Id.* at 942-43 (quoting *Frank*, 547 F.3d at 570).   The Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b), in the Sixth Circuit's view, additionally "[b]olster[s] this rule of specificity" by "impos[ing] further pleading requirements."   *Id.* (citing *Frank*, 547 F.3d at 570; *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)). "First, the complaint must 'specify each statement alleged to have been misleading' along with 'the reason or reasons why the statement is misleading.'" *Id.* (quoting § 78u–4(b)(1)). "Second, plaintiffs must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id.* (quoting § 78u–4(b)(2).

### A.   Plaintiffs' Rule 10b-5 Claim Against Wagenseller Fails Because Wagenseller Did Not Have "Ultimate Authority" over the Alleged False Statements in LEED's Schedule 13D Filings.

Wagenseller argues that Count IX must be dismissed because Plaintiffs have failed to adequately allege any of the elements of a 10b-5 claim.  (Docket No. 31, at 20-22.)  Wagenseller devotes the bulk of his discussion to the first element, "a material representation by the defendant," arguing that, in light of the Supreme Court's recent *Janus* decision, he cannot possibly be held liable because he lacked the ultimate authority over any alleged false statement in LEED's Schedule 13D filings and, thus, was not the "maker" of any such statement.  (Docket No. 31, at 21-22.)

*Janus* followed on the Supreme Court's decision in *Central Bank of Denver*, 511 U.S. at 177, where the Court held that there is no private right of action under § 10(b) for aiding and abetting securities fraud.  Then in *Janus*, the Supreme Court expounded on the issue of primary liability relative to Rule 10b-5 causes of action, clarifying that "[f]or purposes of Rule 10b-5(b), the maker of a statement is the person

or entity with the ultimate authority over the statement, including its content and whether and how to communicate it." *Id.* at 2302. In that sense, the Court held that "[o]ne who prepares or publishes a statement on behalf of another is not its maker." *Id.* Thus, in deference to the "narrow scope that [courts] must give the implied private right of action," the Supreme Court declined to "expand liability beyond the person or entity that ultimately has authority over the false statement." *Id.* at 2303.

*Janus* dealt with a private action under Rule 10b-5 against Janus Capital Group (JCG) and its wholly owned subsidiary, Janus Capital Management (JCM). The plaintiff there alleged that JCG and JCM made false statements in certain SEC filings that had been filed by Janus Investment Fund, a separate legal entity created by JCG. *Id.* at 2299. The Supreme Court granted *certiorari* to address whether JCM could be held liable for false statements in Janus Investment Fund's filings. The Court concluded that JCM could not, because JCM was not the "maker" of any of the statements in Janus Investment Fund's filings. *Id.* at 2304-05. In reaching that conclusion, the Court focused largely on who bore the statutory obligation to file the documents with the SEC and who was the "filer" of record. *Id.* Specifically, the Court reasoned:

> Under this rule, JCM did not "make" any of the statements in the Janus Investment Fund prospectuses; Janus Investment Fund did. Only Janus Investment Fund—not JCM—bears the statutory obligation to file the prospectuses with the SEC. The SEC has recorded that Janus Investment Fund filed the prospectuses. [citing SEC records recording the "filer" of the prospectuses as "Janus Investment Fund."] There is no allegation that JCM in fact filed the prospectuses and falsely attributed them to Janus Investment Fund. Nor did anything on the face of the prospectuses indicate that any statements therein came from JCM rather than Janus Investment Fund—a legally independent entity . . . .

*Id.* at 2305.

Plaintiffs attach as separate exhibits to their Amended Complaint some seven Schedule 13D filings.  (*See* Docket Nos. 26-5; -9; -16; -19; -20; -22; -24.)  Plaintiffs do not specify in Count IX which of these filings form the basis of their Rule 10b-5 claim or which they attribute to Wagenseller as having the "ultimate authority" over.  (*See* Docket No. 26, at 61-63.)  However, the Court's reading of the 126 paragraphs preceding Count IX suggests that the Schedule 13D filings on which Plaintiffs base this claim are those as Docket Nos. 26-19, 26-20, and 26-24.[18]  (*See* Docket No. 26, at 36-39.)  As best the Court can tell, Plaintiffs allege that the Schedule 13Ds at Docket Nos. 26-19 and 26-20 were fraudulent insofar as the payment deadline provisions in the New Contract, (Docket No. 26-17), which required final payment by September 30, 2012, were inconsistent with the payment deadline provisions of the stock purchase agreement between LEED and Trinity/Delaware, which required final payment by October 5, 2012.  (*See* Docket No. 26, at 36-37.)  According to Plaintiffs, Wagenseller "drafted each of these [Schedule 13D filings] and . . . caused them to be filed at his direction."  (Docket No. 26, at 37.)

Plaintiffs' Rule 10b-5 claim against Wagenseller presents a number of shortcomings.  First and foremost, under the rule laid out by the Supreme Court in

---

[18] Plaintiffs point to Docket No. 26-24 alleging that "[i]n an effort to further deceive the investing public and to aid and abet the efforts of Mr. and Mrs. Simmons and Mr. Schroering in their charade to purloin the Plaintiffs' 70% interest in Trinity/Delaware, Mr. Wagenseller audaciously drafted [these] documents for the purposes of filing."  (Docket No. 26, at 38.)  Plaintiffs further state that they "were astonished with this action by Mr. Wagenseller."  (Docket No. 26, at 39.)  However, Plaintiffs label this exhibit "Draft SEC 13D filings" and expressly state that Wagenseller withdrew this document after receiving their objections.  Thus, the draft Schedule 13D at Docket No. 26-24 appears to the Court to be just that—a draft—as it was never filed with the SEC.  As such, it cannot form the basis of Rule 10b-5 claim and need not be discussed further here.

*Janus*, Wagenseller did not "make" any of the alleged misrepresentations in these Schedule 13Ds. Wagenseller bore no statutory obligation to file any of these Schedule 13Ds with the SEC. *See* 17 C.F.R. § 240.13d-1(a). The SEC has recorded that LEED filed these 13Ds; thus, Wagenseller is not the "filer" of record. Furthermore, Plaintiffs do not allege that Wagenseller filed these Schedule 13Ds himself and falsely attributed them to LEED, and nothing on the Schedule 13Ds themselves suggests that any statements therein came from Wagenseller. At best, Plaintiffs allege that Wagenseller "drafted" or "prepared" them for LEED, or that Wagenseller "caused them to be filed (by his retained EDGAR filing person)." This is precisely the argument rejected by the Supreme Court in *Janus* for establishing ultimate authority over a statement in the context of Rule 10b-5 claim.[19] *See* 131 S. Ct. at 2302 ("One who prepares or publishes a statement on behalf of another is not its maker."). Therefore, as a matter of law, the Court finds that Plaintiffs cannot state a plausible claim for relief against Wagenseller via a Rule 10b-5 cause of action.

> **B.     Plaintiffs' Rule 10b-5 Claim Also Fails Against Wagenseller and Against Schroering Because Plaintiffs Have Failed to Plead the Requisite Elements of a Rule 10b-5 Claim.**

Moreover, Plaintiffs' Rule 10b-5 claim against both Wagenseller and Schroering fails because Plaintiffs have not pleaded any reliance upon the alleged misrepresentations in those Schedule 13Ds, any economic loss, or any loss causation linking such loss to the alleged misrepresentation. Count IX recites these elements but makes no further mention whatsoever of "reliance," "economic loss," or "causation."

---

[19] Notably, *Janus* also addressed this argument in the context of a Rule 12(b)(6) motion to dismiss and found that the district court had appropriately dismissed the complaint for failure to state a claim.

(*See* Docket No. 26, at 61-63.)  A thorough reading of Plaintiffs' Amended Complaint on the whole fails to raise even the inference that Plaintiffs relied on any alleged misrepresentation in those filings—in fact, taking Plaintiffs' allegations as true suggests just the opposite.  Plaintiffs allege that those Schedule 13Ds were filed September 12 and September 13, 2012.  (Docket No. 26, at 36.)  Plaintiffs entered into the New Contract with Trinity/Delaware also on September 12, and a copy of that agreement, in its entirety, is attached as an exhibit to the Schedule 13D that Plaintiffs refer to as the September 12 filing.  (*See* Docket No. 26, at 36; 26-19, at 4-5.)  Thus, any reliance on those filings necessarily would have to occur after they were filed on September 12.  But not only have Plaintiffs failed to plead any facts suggesting they suffered economic loss because of their reliance on those filings, Plaintiffs have failed to plead any facts suggesting any reliance whatsoever *after* those filings were made with the SEC.  As such, Plaintiffs have not pleaded the requisite elements of a viable Rule 10b-5 claim.

Therefore, because the facts simply do not support any inference of reliance, economic loss, or loss causation relative to the Schedule 13Ds on which Plaintiffs base their claim, the Court finds that Plaintiffs cannot state a plausible claim for relief against either Wagenseller or Schroering via a Rule 10b-5 cause of action.

* * *

For these reasons, the Court finds that Plaintiffs have failed to state a viable Rule 10b-5 claim against either Wagenseller or Schroering.  As such, the Court will GRANT the Wagenseller and Schroering Defendants' respective Motions to Dismiss relative to Count IX.

CONCLUSION

Having considered the parties' respective arguments, and being otherwise sufficiently advised, for the reasons set forth above;

IT IS HEREBY ORDERED that the Schroering Defendants' Motion to Dismiss, (Docket No. 28) is GRANTED, and Counts I (breach of the Old Contract), II (breach of the New Contract), III (fraudulent inducement to contract), IV (promissory estoppel), V (equitable estoppel), VI (common law fraud), VII (civil conspiracy), VIII (RICO claims), and IX (Rule 10b-5 claims) are hereby DISMISSED with prejudice as against Defendants Schroering and LEED;

IT IS HEREBY FURTHER ORDERED that the Wagenseller Defendants' Motion to Dismiss, (Docket No. 31), is GRANTED IN PART and DENIED IN PART as follows:

(1) The Wagenseller Defendants' Motion is GRANTED as to Defendants Wagenseller, Mr. Simmons, Mrs. Simmons, Trinity/Kentucky, and Counts I (breach of the Old Contract), II (breach of the New Contract), III (fraudulent inducement to contract), IV (promissory estoppel), V (equitable estoppel), VI (common law fraud), VII (civil conspiracy), VIII (RICO claims), and IX (Rule 10b-5 claims) are hereby DISMISSED with prejudice as against these Defendants;

(2) The Wagenseller Defendants' Motion is GRANTED as to Defendant Trinity/Delaware relative to Counts III (fraudulent inducement to contract), IV (promissory estoppel), V (equitable estoppel), VI (common law fraud), VII (civil conspiracy), VIII (RICO claims), and IX (Rule 10b-5 claims), and these counts are hereby DISMISSED with prejudice as against Trinity/Delaware;

(3) The Wagenseller Defendants' Motion is DENIED as to Defendant Trinity/Delaware relative to Counts I (breach of the Old Contract) and II (breach of the New Contract).

IT IS SO ORDERED.

Date:

cc:      Counsel